# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA

**Robert Lewis Jr.,** *on behalf of himself and others similarly situated,*

**Plaintiff,**

**v.**

**Key Digital Strategies, LLC,**

**Defendants.**

**CASE: 1:25-cv-02757-VMC**

**Key Digital Strategies, LLC's Response to Plaintiff's Motion to Dismiss Defendant's Amended Counterclaim**

## KEY DIGITAL STRATEGIES, LLC'S RESPONSE TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIM

COMES NOW, Key Digital Strategies, LLC ("KDS"), the named defendant in the above-styled action, by and through the undersigned counsel, and hereby files this *Key Digital Strategies, LLC's Response to Plaintiff's Motion to Dismiss Defendant's Amended Counterclaim* ("Plaintiff's Second Motion"), thereby requesting this Court to deny Plaintiff's Second Motion by showing this Court the following:

## INTRODUCTION

Plaintiff attempts to discredit *Defendant Key Digital Strategies LLC's First Amendment to Defendant Key Digital Strategies' Answer, Defenses, and Counterclaim* ("Amended Answer") through broad sweeping assertions of law and misstatements of both law and legal trends in the Eleventh Circuit. As set forth

1

below, KDS's counterclaims provide more than sufficient facts to state a claim to relief that is plausible on the face of the pleadings.

## ARGUMENT

### I.    Standard For a Motion to Dismiss.

Plaintiff's Second Motion is subject to one of the highest thresholds for a counter-defendant to satisfy. A claimant needs only to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The Supreme Court explained that a complaint 'does not need detailed fact allegations,' but the allegations 'must be enough to raise a right to relief above the speculative level.'" *Speaker v. U.S. Dept. of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555)).  The U.S. Supreme Court has further clarified that this standard does not require the claims to be probable but and simply "asks for more than a *sheer possibility* that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 662 (citations omitted) (emphasis added). In other words, the factual allegations need not be detailed but rather only provide notice of the claims and grounds of such claims. *Twombly*, 550 U.S. at 555 (citations omitted).

Deference is given to plaintiffs on motions to dismiss. More specifically, courts must accept as true all factual allegations in the complaint, and furthermore, must construe such allegations "in the light most favorable to the plaintiffs." *White v. Lemacks*, 183 F.3d 1253, 1255 (11th Cir. 1999).

Here, the Amended Answer survives a motion to dismiss. KDS's Amended Answer pleads sufficient facts to give rise to the right to relief above the speculative level for causes of action relating to fraud, declaratory relief concerning breach of contract, breach of the implied covenant of good faith and fair dealing, contractual attorney's fees, and statutory attorney's fees.

## II.    KDS's Contractual Claims Survive a Motion to Dismiss.

KDS has alleged that there is a contract between Plaintiff and KDS and, furthermore, that Plaintiff breached said contract. As shown below, KDS pleadings satisfy the minimum standard to survive a motion to dismiss as to both the existence of a contract and the breach thereof.

### (1)    Existence of a Contract

Plaintiff claims that no contractual relationship existed between KDS and Plaintiff. However, KDS has alleged the existence of this contract and is entitled to have this factual allegation treated as true for the purposes of Plaintiff's Second Motion. Moreover, Plaintiff's ownership and purported control of the telephone number that was used to opt into KDS's services is the basis of the above-styled

action. The facts pleaded in the Amended Answer indicate the existence of a contractual relationship with the owner/user of the telephone number—(404) XXX-4154—which Plaintiff claims to own.

Under Georgia law, "there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. "'The cardinal rule of construction is to determine the intention of the parties.'" *Groundfloor Holdings GA, LLC v. WFG National Title Insurance Company*, 375 Ga. App. 6, 12 (2025) (quoting *Graham v. HHC St. Simons, Inc.*, 332 Ga. App. 693, 695-96 (2013); other citations and punctuation omitted). When considering and determining the intention of the parties, courts consider "'the circumstances surrounding the making of the contract,'" which includes interactions between the parties. *Id.*

Here, Plaintiff, or a party operating on Plaintiff's behalf, and KDS entered into a contract. First, the parties were able to contract. The record offers no indication of an issue relating to competency for any of the parties to the above-styled action. Second, consideration moved toward the contract, specifically, KDS providing Plaintiff text message solicitations for products. (Doc. No. 27-1, 31). The opt-in form allowed Plaintiff to share opinions relating to Poll2Action while receiving text message solicitations from KDS for various products and offers ("Contract"). (*Id.*).

4

Third, Plaintiff and KDS assented to the Contract. While Plaintiff contends that he never provided the information contained in the Contract, Plaintiff does purport to be the authorized user of the telephone number at issue: (404) XXX-4154. (Doc. No. 14-1 ¶¶ 4-5). KDS only received Plaintiff's information because Plaintiff, or someone acting on behalf of Plaintiff, entered Plaintiff's phone number into the Contract. (Doc. No. 31 ¶ 50).

Plaintiff contended that he was not the party that assented to the Contract, but instead, Shirel Price assented to the Contract. (Doc No. 32 at 4). This contention is in error. Plaintiff claims to own and control the telephone number. (Doc. No. 14-1 ¶¶ 4-5). If Plaintiff owns and controls the telephone number, then no one else owns it, he is the only authorized user.

Assuming *arguendo* that a device could have used the "auto-fill" function on a device to populate Plaintiff's telephone number, even in such a case, KDS would not have received Plaintiff's telephone number. The Contract further requires a person to click the box next to a statement that certifies that the person clicking the box is indeed the authorized user of the telephone number and consents to receiving communications from KDS. (Doc. No. 27-1). Plaintiff, or someone acting on behalf of Plaintiff, clicked the box, thereby further manifesting Plaintiff's assent to receiving KDS's solicitations. (Doc. No. 27-1). In sum, an auto-fill function cannot click the box on its own and thus fully assent to the Contract—a natural person must

affirmatively click the box.

Moreover, the standard applicable on a motion to dismiss requires the Court to ignore Plaintiff's contrary factual argument that a third-party simply put the number in by error. Whoever controlled the phone number interacted with KDS's text message solicitations after subscribing, which further indicates Plaintiff's agreement to the Contract. As stated in *Groundfloor Holdings GA, LLC*, courts look to the surrounding circumstances between the parties. *Groundfloor Holdings GA, LLC*, 375 Ga. App. at 12 (quoting *Graham*, 332 Ga. App. at 695-96). Plaintiff *engaged* with the text messages sent by KDS. (Doc. No. 27-4 at 3-4). Each text message contains links to various products or offers, and Plaintiff clicked the links in some of the texts. (*Id.*). Furthermore, Plaintiff did not request KDS to stop sending messages until after receiving multiple messages. (*Id.*). If Plaintiff truly never assented to the Contract, then (1) KDS would never have received Plaintiff's phone number entered into the Contract; (2) Plaintiff would not have clicked the links contained in KDS's text messages; and (3) Plaintiff would have immediately sent "Stop" after receiving the first unwanted text message.

Fourth, the Contract can operate on the subject matter. The Contract concerns the subject matter of receiving consented-to text message solicitations from KDS. (Doc. No. 27-1 at 2). This does not involve any illegal or improper matter by which a contract cannot operate. Because all elements of a contract are satisfied, KDS

6

survives a motion to dismiss on the existence of a contract.

(2)     Breach of the Contract

Plaintiff breached the Contract. Under Georgia law, a breach of contract action requires a claimant to show "the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Moore v. Lovein Funeral Home, Inc.*, 358 Ga. App. 10, 12 (2020) (quoting *UWork.com, Inc. v. Paragon Technologies*, 321 Ga. App. 584, 590 (2013)). Furthermore, a breach exists "if a contracting party repudiates or renounces liability under the contract; fails to perform the engagement as specified in the contract; or does some act that renders performance impossible." *Id.*

First, Plaintiff breached the Contract by entering into the Contract, baiting KDS to send text message solicitations to Plaintiff, then filing the above-styled action claiming that he never entered into the Contract. (Doc. No. 31 ¶ 58). By filing the above-styled action and refusing to acknowledge his consent to the Contract, Plaintiff affirmatively repudiated the Contract. Plaintiff further breached the Contract by refusing to arbitrate his alleged claims and dispute the alleged claims in Tarrant County, Texas. (Doc. No. 31 ¶¶ 55-59).

Second, KDS has suffered damages in defending itself in the above-styled action. KDS has suffered damages in defending itself against Plaintiff's unreasonable and unfounded claims by incurring litigation expenses. Further,

Plaintiff has attempted to treat the above-styled action as a fishing expedition by filing the above-styled action as a class action lawsuit in hopes of trying to find actual wrongdoing by KDS. KDS has had to defend itself, not where it is located or where any of its principal(s) reside (namely, Texas), but rather, KDS has had to litigate the above-styled action here in Georgia.

Third, KDS has the right to complain of Plaintiff's breach. KDS contacted Plaintiff only after KDS received the Contract bearing Plaintiff's telephone number and Plaintiff's affirmative and unequivocal consent to receiving telephone solicitations. (Doc. No. 27-1 at 1-2; Doc No. 31 ¶ 49). That being the case, KDS properly contacted Plaintiff, then Plaintiff, acting in bad faith, filed the above-styled action and unfoundedly argued that no Contract existed. KDS performed its obligations under the Contract, while Plaintiff improperly and unreasonably breached the Contract.

(3)    Plaintiff Must Pay Attorney's Fees Allowed Under the Contract

Because Plaintiff entered into the Contract with KDS, Plaintiff is subject to the terms of the Contract. Under Georgia law, a court may award attorney's fees when the contract at issue allows for the recovery of such fees. *HA & W Financial Advisors, LLC v. Johnson*, 336 Ga. App. 647, 657 (2016). As set forth in the terms and conditions Plaintiff agreed to in the Contract, KDS is entitled to the recovery of the attorney's fees it has incurred in defending itself in the above-styled class action

lawsuit, so long as KDS prevails. (Doc. No. 27-2 ¶ 19).

(4)   Plaintiff's Breach of Implied Covenant of Good Faith and Fair Dealing

KDS also brought a claim for breach of the implied covenant of good faith and fair dealing. "'[E]very contract implies a covenant of good faith and fair dealing which modifies and becomes part of the contract itself[.]'" *Geico Indemnity Company v. Whiteside*, 311 Ga. 346, 350 (2021) (quoting *Piedmont Office Realty Trust v. XL Specialty Ins. Co.*, 297 Ga. 38, 42 (2015)). "A breach of that duty may arise where a party to a contract acts arbitrarily or capriciously in executing its contractual duties." *Stewart v. Suntrust Mortg., Inc.*, 331 Ga. App. 635, 639 (2015) (citing to *Hunting Aircraft v. Peachtree City Airport Auth.*, 281 Ga. App. 450, 452 (2006)). A breach of the implied covenant of good faith and fair dealing also occurs when one contracting party acts in bad faith to induce the other contracting party to default on the contract or otherwise act wrongfully. *See Mbigi v. Wells Fargo Home Mortg.*, 336 Ga. App. 316, 328 (2016) (citing *West v. Koufman*, 259 Ga. 505, 506 (1989)). Here, Plaintiff's conduct can only be characterized as bad faith—namely, Plaintiff entered into the Contract, received KDS's text message solicitations, then filed the above-styled class action lawsuit while alleging Plaintiff never consented to receiving KDS's text message solicitations. (Doc. No. 31 ¶ 57-58). Plaintiff's bad faith conduct is in itself a breach of the covenant of good faith and fair dealing.

As set forth above, Plaintiff and KDS entered into the Contract, which

Plaintiff subsequently breached. KDS's allegations relating to the existence of a contract and the breach thereof thus survive a motion to dismiss. Because Plaintiff entered the Contract with KDS and Plaintiff breached the Contract, KDS is entitled to receive contractual attorney's fees as allowed under the Contract.

## III.    KDS's Fraud Claim Survives a Motion to Dismiss.

KDS's fraud claim as alleged in the Amended Answer satisfies the standard set forth in Rule 9. Because Plaintiff's fraud is solely within his own mind, the Eleventh Circuit applies a less stringent approach to Rule 9. KDS's fraud allegation satisfies such standard. Furthermore, KDS's allegations satisfy all elements of fraud.

(1)    The Eleventh Circuit's Relaxed Rule 9 Standard.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

The purpose of Rule 9(b) is to provide notice of the alleged misconduct and protect against "'spurious charges.'" *Dugas v. 3M Co.*, 101 F.Supp.3d 1246, 1254 (M.D. Fla. 2015) (quoting *U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012) and other citations and quotations omitted in original). The Eleventh Circuit has warned that when a district court measures a fraud claim on a motion to dismiss, the district court must "'always be careful to

10

harmonize the directives of Rule 9(b) with the broader policy of notice pleading.'"

*Dugas*, 101 F.Supp.3d at 1254 (quoting *Friedlander v. Nims*, 755 F.2d 810, 813 (11th

Cir. 1985).

In an effort to harmonize the directives of the standard set forth in Rule 9 and

the broader policy of notice pleading, the Eleventh Circuit has applied Rule 9 "less

stringently when 'specific "factual information [about the fraud] is peculiarly within

[the opposing party's] knowledge or control."'" *American General Life and Acc. Ins.*

*Co. v. Ward*, 509 F.Supp.2d 1324, 1336 (N.D. Ga. 2007) (quoting *Hill v. Morehouse*

*Med. Assoc., Inc.*, 2003 WL 22019936 * 3 (11th Cir. 2003)); *United States ex Rel.*

*Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999) ("We

have held that when the facts relating to the alleged fraud are peculiarly within the

perpetrator's knowledge, the Rule 9(b) standard is relaxed…"). This less stringent

standard allows for a claimant to "plead based upon information and belief," so long

as the claimant accompanies the allegations for fraud with "'factual allegations that

make [the claimant's] theoretically viable claim plausible.'" *Hill*, 2003 WL

22019936 * 3 (11th Cir. 2003) (quoting *Epic Healthcare Mgmt. Group*, 193 F.3d at

308; *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002))).

Plaintiff specifically stated that Rule 9 "makes pleading fraud on 'information and

belief' *expressly impermissible*. (Doc. No. 32 at 11). However, as stated above,

Plaintiff's assertion is a misstatement and mischaracterization of the Eleventh

11

Circuit's standard.

Here, Plaintiff's fraud is solely within his mind, thereby permitting KDS to plead on the Eleventh Circuit's less stringent Rule 9 standard. On the outset, the knowledge of the fraud is solely within Plaintiff's possession and mind. Plaintiff claims to be the only owner and authorized user of the telephone number at issue— (404) XXX-4154. The previous owner of the telephone number, Shirel Price, owned the telephone number back in 2014 but not after 2014. (Doc No. 31 ¶¶ 19-20). That being the case, Plaintiff is the sole user of the telephone number, and it is exceedingly unlikely that Shirel Price continues to use the telephone number over ten (10) years after she was authorized to use it. Thus, Plaintiff's use of his phone number is squarely within only his knowledge. No one else is aware of Plaintiff's use of his phone number, especially not KDS. With Plaintiff's use of his telephone number within his own knowledge, KDS can permissibly plead "on information and belief."

(2)    The Amended Answer Satisfies All Elements of Fraud.

Plaintiff contends that KDS's fraud allegations fail to rise above merely speculative. Notably, most of Plaintiff's contention with KDS's fraud allegation is that KDS cannot plead on the basis of "information and belief;" however, as set forth above, such position is a misstatement of Eleventh Circuit's approach to Rule 9. (Doc. No. 32 at 11). Regardless, KDS's allegation of fraud rises above a merely speculative pleading.

Longstanding Georgia law has required five elements for fraud. *Paul v. Destito*, 250 Ga. App. 631, 635 (2001). Fraud requires a showing of: "(1) a false representation or omission of material fact; (2) scienter; (3) an intent to induce the party alleging fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *Id*. at 635. The Amended Answer satisfactorily pleads each element.

Concerning the first element, Plaintiff's information in the Contract constitutes a false representation. Plaintiff is the only authorized user of the telephone number in issue. However, notably, the information entered into the Contract does not state "Robert Lewis" but rather the following information: (1) "Shirel," for the field requesting the first name; (2) "Price," for the field requiring the last name; (3) the telephone number at issue—(404) XXX-4154; and (4) a corresponding email relating to "Shirel Price." (Doc. No. 31 ¶ 50; Doc. No. 27-1 at 2). Plaintiff argued that KDS "doesn't even know who uttered the alleged 'false' statements[.]" (Doc. No. 32 at 12). However, KDS contends that because Plaintiff is the only authorized user of the telephone number and the previous user did not use the telephone number since 2014, Plaintiff is the only individual who could have entered the telephone number into the Contract. (Doc. No. 31 ¶¶ 19-21). Therefore, Plaintiff made the false representation that "Shirel Price" entered the Contract, when Plaintiff was the individual entering the information into the required feels and thus requesting KDS's text message solicitations.

The second element of fraud is scienter. Plaintiff was well aware the representations were false. (Doc. No. 31 ¶ 37). Plaintiff's name is not "Shirel Price," but "Robert Lewis Jr." (Doc. No. 1 ¶ 1; Doc. No. ¶¶ 31-32, 35). Additionally, Plaintiff intentionally submitted the misrepresentation to KDS, because the Contract requires a person to manually click the box consenting to KDS's telephone solicitations. (Doc. 31 ¶ 36). KDS's requirement that a person manually click the box removes and absolves any contention that a prior user could have used the "auto-fill" function on a smart device, which would theoretically automatically populate the contact information and proceed to the next webpage. (*Id.*). The Contract commences and is complete only after a natural person deliberately clicks the box. (*Id.*). Furthermore, it is exceedingly doubtful that Shirel Price, who has not used the telephone number since 2014, would have the same information loaded into a device and use the "auto-fill" function and check-mark the box for a telephone number she has not used in over ten (10) years. Therefore, Plaintiff intentionally submitted the misrepresentation to KDS.

Third, Plaintiff intended to induce KDS to send text message solicitations to Plaintiff, thereby giving Plaintiff the opportunity to file a lawsuit alleging wrongful receipt of text message solicitations due to the lack of consent. KDS contends that Plaintiff submitted the Contract with contact information relating to "Shirel Price," and his telephone number for KDS to send solicitations to Plaintiff. (Doc. No. 31 ¶

39). Plaintiff then filed the above-styled action alleging that KDS violated the TCPA due to Plaintiff not consenting, but instead "Shirel Price" consenting to receiving KDS's telephone solicitations. (*Id.*). Notably, Plaintiff has filed four other cases based on the same set of facts in the Northern District of Georgia alone. (Doc. No. 31 ¶ 40).

Additionally, Plaintiff was previously married. (Doc No. 31 ¶ 22). When he was married, Plaintiff and his wife shared a residence with a person named Angela Price in Atlanta, Georgia. (Doc No. 31 ¶¶ 22-23). Angela Price is a possible relative of Shirel Price. (Doc No. 31 ¶ 25). KDS contends that Plaintiff obtained Shirel Price's telephone number and ultimately conspired with Shirel Price either to use her name himself or for her to opt-in to receiving telephone solicitations from telemarketers, thereby permitting Plaintiff to bring several lawsuits on the basis that he never consented to receiving such solicitations. (Doc. No. 31 ¶¶ 26-28).

Fourth, KDS justifiably relied on Plaintiff's misrepresentation. KDS received the information submitted in the Contract and contacted Plaintiff's telephone number, as there was no indication that the information was improper or did not otherwise belong to Plaintiff. (Doc. No. 31 ¶ 42). Furthermore, KDS relied on the certification marked by the check-marked box, as only a natural person can deliberately select the box. (Doc. No. 31 ¶ 43).

The final element requires KDS to suffer some form of damages. KDS has

15

suffered damages by having to defend itself against a lawsuit brought on a fraudulent basis. (Doc. No. 31 ¶ 44). Furthermore, KDS has suffered reputational damage as Plaintiff's allegations include allegations that KDS has violated the TCPA.

As shown above, KDS has sufficiently pleaded all elements of fraud. KDS's use of "on information and belief" is permitted under the Eleventh Circuit's less stringent standard because only Plaintiff knows how his telephone number is used. KDS has properly pleaded all elements of fraud and included a more than satisfactory factual basis for the fraud. Therefore, KDS's fraud claim survives a motion to dismiss.

## IV.    The Eleventh Circuit Permits Recovery of Statutory Attorney's Fees.

Plaintiff mischaracterizes the Eleventh Circuit's posture concerning O.C.G.A. § 13-6-11 by asserting that said statute does not apply in federal court. (Doc. No. 32 at 8). Plaintiff contends that "it is questionable as an initial matter if such a state law procedural counterclaim (referring to O.C.G.A. § 13-6-11) is even permissible in a federal court action proceeding on federal question jurisdiction." (Doc. No. 32 at 8). Plaintiff characterizes O.C.G.A. § 13-6-11 as a procedural rule that could be barred in a federal question case under the *Erie* doctrine. (*Id.*).

Plaintiff's argument is unfounded. On the outset, the *Erie* doctrine does not apply to federal question cases, but rather only cases in which the diversity of citizenship serves as the district court's subject matter jurisdiction. *Esfeld v. Costa*

*Crociere, S.P.A.*, 289 F.3d 1300, 1306 (11th Cir. 2002) (quoting *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (other citations omitted)). Plaintiff brought this case pursuant to the TCPA, which is a Congressional Act, and thereby constitutes a federal question case.

The above-styled action does involve diversity in citizenship, regardless an *Erie* analysis weighs in favor of applying O.C.G.A. § 13-6-11 in the above-styled action. Under the *Erie* doctrine "'federal courts sitting in diversity apply state substantive law and federal procedural law.'" *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1306 (11th Cir. 2002) (quoting *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (other citations omitted)). The Eleventh Circuit has held that "[i]t is clear that statutes allowing for recovery of attorney's fees are substantive for *Erie* purposes." *McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001). The Northern District of Georgia has specifically held that "O.C.G.A. § 13-6-11 is a substantive law as a matter of precedent." *Hammock v. Wal-Mart Stores, Inc.*, 2013 WL 11897800 at *3 (N.D. Ga. 2013). Therefore, Plaintiff's posture that federal courts do not apply O.C.G.A. § 13-6-11 is improper.

KDS is entitled to relief under O.C.G.A. § 13-6-11. The statute permits recovery of attorney's fees and expenses of litigation when "(1) the plaintiff specifically pleads and prays for such an award, and (2) the finder of fact finds that the defendant acted in bad faith in the underlying transaction or that, *after the*

*transaction on which the cause of action is predicated*, the defendant was stubbornly litigious or caused the plaintiff unnecessary trouble and expense." *Horton v. Dennis*, 325 Ga. App. 212, 216 (2013) (emphasis added).

Here, KDS is entitled to recovery of its attorney's fees and expenses of litigation. First, KDS specifically requested this relief in the Amended Answer. (Doc. No. 31 ¶¶ 64-70). Second, Plaintiff acted in bad faith by entering into the Contract to receive KDS's telephone solicitations, receiving multiple text messages and interacting with the links embedded within the text messages, then subsequently filing the above-styled action, in which Plaintiff alleges never to have consented to receiving KDS's telephone solicitations. (Doc. No. 31 ¶ 67). Plaintiff's attempt to bait KDS to send telephone solicitations then turnaround and sue KDS is definitionally bad faith conduct. Therefore, KDS is entitled to recovery of its attorney's fees and expenses of litigation under O.C.G.A. § 13-6-11.

## V.   This Court Retains Subject Matter Jurisdiction.

Plaintiff contends that KDS's counterclaims should be dismissed for lack of subject matter jurisdiction pursuant to FRCP 12. (Doc. No. 32 at 2, 16). Plaintiff only lodges this argument in conjunction with KDS's fraud allegation against Plaintiff. (Doc. No. 32 at 16-18). Plaintiff argues that this Court may not have Article III standing due to a purported challenge that KDS's fraud allegation is not traceable to Plaintiff.

When addressing a standing issue, "the Supreme Court has formulated a two-component framework, consisting of 'irreducible' constitutional requirements and prudential considerations." *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 984 (11th Cir. 1990) (citations omitted). The constitutional considerations invoke three factors: (1) "the party asserting standing must have suffered actual injury or show the imminence of such injury," (2) "the injury must be fairly traceable to the alleged unlawful conduct," and (3) "a demonstration must be made that the requested relief likely will redress the injury." *Id.* at 984 (citations omitted). The prudential considerations involve "assertion of a third party's rights," "allegation of a generalized grievance rather than injury particular to the litigant," and "assertion of an injury outside the zone of interests of the statute or constitutional provision." *Id.* at 985. Plaintiff's argument takes no issue with the prudential considerations but rather leans all its argumentative weight on the issue of traceability. (Doc. No. 32 at 16-17).

Plaintiff contends that KDS "has failed to plead with specific causation such as to make the challenged fraudulent conduct fairly traceable to Mr. Lewis (Plaintiff) for Article III purposes." (Doc. No. 32 at 17). However, traceability is unequivocally not at issue in the above-styled action.

As shown above, Plaintiff is the sole user of his telephone number, thus, only he controls when and to whom his telephone number is submitted, and Plaintiff

submitted his telephone number to KDS. (Doc. No. 27-1 at 2; Doc No. 31 ¶ 31-35). KDS received Plaintiff's telephone number *only after* Plaintiff entered the Contract by Plaintiff providing KDS his telephone number and manually clicking the box manifesting his assent to receiving text messages from KDS. (Doc. No. 31 ¶¶ 31-35). KDS sent the consented-to text messages to Plaintiff's telephone number. (Doc. No. 27-4). Despite receiving more than one message and *interacting with the link contained in the text messages*, Plaintiff filed the above-styled action alleging that he never consented to KDS's text messages and sought to certify a class against KDS with no information of any other injured parties. (*Id.*). As a result of Plaintiff's deceptive conduct, KDS has incurred both litigation expenses and reputational harm by having a party improperly allege TCPA violations. KDS's injuries are directly traceable to Plaintiff's conduct because absent Plaintiff's misrepresentation, submission of his phone number to KDS, and his wrongful filing of this action, KDS would not have suffered any of the injuries. Therefore, no Article III standing issue exists as to KDS's fraud claim.

**VI.    Plaintiff's Second Motion to Dismiss Fails to Satisfy the Local Rules.**

Plaintiff's Second Motion to Dismiss does not satisfy this Court's Local Rules. Under L.R. 7.1(D), counsel must certify that the brief contains an approved font. L.R. 7.1(D). Failure to do so permits this Court to "decline to consider any motion or brief[.]" L.R. 7.1(F). Here, Plaintiff's Second Motion is absent any such

20

certification, and is therefore, incompliant with the Local Rules of the Northern District of Georgia.

## CONCLUSION

This Court should deny Plaintiff's Second Motion. On a motion to dismiss KDS's counterclaims, all factual allegations are construed in favor of KDS. KDS has pleaded sufficient facts pertaining to its counterclaims, such that all KDS's counterclaims satisfy the notice pleading requirements and give rise to more than sheer speculation. In light of the foregoing, KDS respectfully requests that this Court deny Plaintiff's Second Motion.

Dated: April 21, 2026

/s/ Blake W. Meadows
Blake W. Meadows
Georgia Bar No. 569729
Christopher J. Horton
Georgia Bar No. 316644
*Attorneys for Defendant*

SMITH & MEADOWS, LLC
215 Greencastle Road, Suite B
Tyrone, Georgia 30290
(404) 835-6506
blake@smithmeadowslaw.com
chris@smithmeadowslaw.com

## CERTIFICATE OF COUNSEL

I hereby certify that the foregoing has been prepared with Times New Roman, 14 Point font, one of the font point selections approved by the Court in L.R. 5.1B.

Dated: April 21, 2026.

/s/ Blake W. Meadows
Blake W. Meadows
Georgia Bar No. 569729
Christopher J. Horton
Georgia Bar No. 316644
*Attorneys for Defendant*

SMITH & MEADOWS, LLC
215 Greencastle Road, Suite B
Tyrone, Georgia 30290
(404) 835-6506
blake@smithmeadowslaw.com
chris@smithmeadowslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing *Defendant's Response to Plaintiff's Motion to Dismiss Defendant's Amended Counterclaim* with the ECF System for the Northern District of Georgia, which shall automatically serve counsel for Plaintiff:

Valerie Chinn
Chinn Law Firm, LLC
245 N. Highland Ave, Suite 230 #7
Atlanta, GA 30307
vchinn@chinnlawfirm.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com
*Attorneys for Plaintiff*

This 21st day of April 2026.

/s/ Blake W. Meadows
Blake W. Meadows
Georgia Bar No. 569729
Christopher J. Horton
Georgia Bar No. 316644
*Attorneys for Defendant*

SMITH & MEADOWS, LLC
215 Greencastle Road, Suite B
Tyrone, Georgia 30290
(404) 835-6506
blake@smithmeadowslaw.com
chris@smithmeadowslaw.com

23