IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **Robert Lewis Jr.,** *on behalf of himself and others similarly situated*,<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Key Digital Strategies, LLC,**<br><br>**Defendant.** | **CASE: 1:25-cv-02757-VMC**<br><br>**KEY DIGITAL STRATEGIES, LLC'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

**KEY DIGITAL STRATEGIES, LLC'S BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Key Digital Strategies, LLC ("KDS"), the defendant and counter-plaintiff in the above-styled action, by and through its undersigned counsel, and hereby files this *Key Digital Strategies LLC's Brief in Support of its Motion for Summary Judgment*, providing citations to authority and evidence supporting *Key Digital Strategies, LLC's Motion for Summary Judgment* ("Motion"), thereby requesting this Court to grant KDS summary judgment.

**INTRODUCTION**

Plaintiff's receipt of six (6) text messages from KDS caused him to file this class action lawsuit, alleging extensive damages and seeking relief under the private right of action under the Telephone Consumer Protection Act of 1991 ("TCPA"), codified at 47 U.S.C. § 227(c)(5). However, the Northern District of Georgia has

1

already held text messages alone do not constitute a violation of the TCPA.

Plaintiff, a serial filer of TCPA actions, filed this lawsuit on a spurious claim. The claim is a mere attempt to conduct a full-fledged fishing expedition to, hopefully, discover some form of wrongdoing on KDS's part, and thus certify a class against KDS. Plaintiff's strategy is not atypical. The TCPA has been the subject of serial filers looking to push marketing companies into fast settlements. However, a recent U.S. Supreme Court case and emerging Eleventh Circuit district court decisions are limiting such tactics and promoting judicial economy.

Eleventh Circuit district courts, including the Northern District of Georgia, have found that the TCPA's private right of action is limited squarely to telephone calls—not text messages. This limitation to liability under the TCPA bars Plaintiff from seeking recovery from KDS. As set forth below, KDS respectfully requests this Court to grant summary judgment against Plaintiff and in favor of KDS, thereby ordering that KDS is not in violation of the TCPA and further order that no class can be certified.

## STATEMENT OF FACTS

Plaintiff is the alleged owner of the telephone number: (404) XXX-4154. (Key Digital Strategies, LLC's Statement of Undisputed Material Facts ("*SOF*") ¶ 2; Doc. No. 14 ¶¶ 4-6). KDS engages in digital marketing through sending text messages, and only text messages, to individuals who elect to receive them. (*SOF* ¶ 3). KDS

never called Plaintiff. (*SOF* ¶ 13). KDS does not purchase contact lists nor uses any list-serve-based contact lists to identify possible recipients for solicitations. (*SOF* ¶ 4). KDS also does not utilize Automatic Telephone Dialing Systems with random or sequential number generators. (*SOF* ¶ 4). Recipients of KDS's solicitations are only individuals who have manually opted-in. (*SOF* ¶ 4).

Opting in to KDS's text messages is a two-step process. (*SOF* ¶ 5). Specifically, a prospective recipient must: (1) provide the person's first name, last name, telephone number, and email address in the required fields, and (2) click a box, thereby certifying that the person is the owner and authorized user of the telephone number submitted and that the person consents to receiving text messages from KDS. (*SOF* ¶ 5).

KDS has developed a special, proprietary software that captures when a person satisfies both steps ("Software"). (*SOF* ¶ 6). After completion of both steps, the Software captures the information by generating a timestamp, IP address, and user-agent string. (*SOF* ¶ 6). The Software then identifies the prospective recipient as an eligible recipient for KDS's text messages and enters the prospective recipient into a database of other eligible recipients. (*SOF* ¶ 6). This database formulates the only pool of contacts to whom KDS sends text messages—KDS does not send text messages to any other group of individuals. (*SOF* ¶ 6).

KDS is aware that recipients may later wish to stop receiving text messages.

Each text message contains instructions to opt-out. (*SOF* ¶ 7). The instructions require the recipient to reply, "Stop." (*SOF* ¶ 7). Once KDS receives "Stop," the Software automatically places the recipient on a separate suppression list. (*SOF* ¶ 7). KDS's Software bars communications to anyone on the suppression list. (*SOF* ¶ 7).

In 2025, KDS conducted a marketing campaign known as "Poll2Action." (*SOF* ¶ 8). The Software received Plaintiff's telephone number after all steps were satisfied and placed Plaintiff in the pool to receive text messages. (*SOF* ¶¶ 5, 8-9).

KDS sent text messages to Plaintiff's telephone number. (*SOF* ¶ 10). Plaintiff clicked the links embedded in the text messages. (*SOF* ¶ 11). After receiving text messages, Plaintiff replied "Stop." (*SOF* ¶ 12). KDS did not send any text messages to Plaintiff's telephone number after receiving "Stop." (*SOF* ¶ 12). Important to this Motion, KDS interacted with Plaintiff only through text messages. (*SOF* ¶ 13). KDS never called Plaintiff. (*SOF* ¶ 13).

While Plaintiff may dispute whether he consented to receiving KDS's text messages, such dispute is immaterial to this Motion. The only pertinent facts to this Motion are that (1) KDS sent text messages to Plaintiff, and (2) Plaintiff's receipt of such text messages. Neither of these facts are in dispute.

## **PROCEDURAL HISTORY**

On May 16, 2025, Plaintiff filed his Complaint against KDS on behalf of himself and a possible class of other plaintiffs to be later certified. (Doc. 1). Plaintiff

served KDS. (Doc. 6). KDS timely filed a motion to dismiss and an answer with counterclaims. (Docs. 7-8). Plaintiff filed a response and a motion to dismiss KDS's counterclaims. (Doc. 12, 14). Responses were filed, and the parties filed a joint preliminary report and discovery report. (Doc. 22).

This Court denied both parties' motions to dismiss and permitted KDS to amend its counterclaims. (Doc. 30-1 at 14). KDS filed its amended counterclaims. (Doc. 31). Plaintiff filed a motion to dismiss, and KDS responded. (Docs. 32, 33).

On October 6, 2025, this Court issued a scheduling order ("Scheduling Order") that set the deadlines for discovery and the filing of motions. (Doc. 24 at 1-2). The Scheduling Order closed fact discovery on March 24, 2026, and required Plaintiff to file his motion for class certification no later than April 6, 2026. (Doc. 24 at 1). The Scheduling Order further mandated that the parties file any dispositive motions "sixty (60) days from the date the Court rules on Plaintiff's Motion for Class Certification." (Doc. 24 at 2). As of the date of this filing, discovery is closed and Plaintiff has not filed a motion for class certification.

**ARGUMENT**

## I.   TIMELINESS OF THIS MOTION.

This Court's Scheduling Order requires that a party file any motion for summary judgment after the Court has ruled on the motion for class certification. (Doc. 24 at 2). The Local Rules require that "motions for summary judgment shall

5

be filed as soon as possible, but, unless otherwise ordered by the Court, not later than thirty (30) days after the close of discovery[.]" L.R. 56.1(D).

This Motion is timely because the Local Rules apply. Plaintiff has not filed a motion for class certification. In the absence of said motion, KDS files this Motion pursuant to the Local Rules, thereby requiring this Motion to be filed thirty (30) days following March 24, 2026. Thus, this Motion is timely.

## II.    STANDARD FOR A MOTION FOR SUMMARY JUDGMENT.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). The court is to construe reasonable inferences and doubts in favor of the non-moving party and believe the evidence of the non-movant party. *United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counts in the State of Ala.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (citations omitted).

However, when a party that does not bear the burden of proof at trial moves the court for a motion for summary judgment, the moving party need only to show that "'there is an absence of evidence to support the nonmoving party's case.'" *Four Parcels*, 941 F.2d at 1438 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). There is no obligation on the moving party to negate the claims. *Id.* at 1437 (quoting *Celotex Corp.*, 477 U.S. at 323). Upon the moving party showing the absence of evidence supporting the case, the nonmoving party then bears the burden

of proof to show that a genuine issue persists. *Id.* at 1438. Any failure on part of the nonmoving party to show an essential element that the nonmoving party bears the burden of proof results in the moving party being entitled to summary judgment. *Id.* at 1438.

Here, KDS is entitled to summary judgment. No factual support exists for Plaintiff's claims. Plaintiff claims injuries for the receipt of text messages, but Plaintiff sought relief pursuant to 47 U.S.C. § 227(c)(5), which prohibits telephone calls—not text messages. Therefore, Plaintiff is not entitled to relief.

III. **PLAINTIFF'S CLAIMS FAIL AS PLAINTIFF RECEIVED ONLY TEXT MESSAGES, NEVER A TELEPHONE CALL.**

Plaintiff cannot provide sufficient evidence to prove an essential element—telephone calls in violation of the TCPA. The undisputed evidence shows that KDS sent text messages to Plaintiff—not telephone calls. Eleventh Circuit district courts have employed recent U.S. Supreme Court cases to interpret § 227(c)(5) as permitting relief for the conduct specifically stated in the statute—violative *telephone calls*, not text messages. Because Plaintiff received only text messages, KDS is entitled to judgment as a matter of law that KDS did not violate the TCPA.

A. **Text Messages Do Not Violate 47 U.S.C. § 227(c)(5).**

Section 227(c)(5) prohibits *telephone calls*, not text messages. District courts in the past were chained to the FCC's regulations concerning the TCPA. However, the U.S. Supreme Court's decision in *Loper Bright Enters. v. Raimondo* freed the

district courts from the FCC's interpretation of § 227(c)(5). Following *Loper*, this Court is able to analyze § 227(c)(5) for itself without being constrained by the FCC.

Upon this Court's analysis of § 227(c)(5), this Court should find, consistent with all other district courts in the Eleventh Circuit, that the private right of action is intended solely for *telephone calls*. Other Eleventh Circuit district courts facing this same question have consistently held that, when employing statutory interpretation, the statute affords a limited private right of action only for telephone calls—not text messages. *Radvansky v. Kendo Holdings, Inc.*, Civ. No. 3:23-cv-00214-LMM, 2026 WL 810929 at *2 (N.D. Ga. Feb. 12, 2026); *Sayed v. Naturopathica Holistic Health, Inc.*, Civ. No. 8:25-CV-00847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025); *James v. Smarter Contact, Inc.*, Civ. No. 8:25-cv-1657-KKM-SPF, 2026 WL 879244 at *1 (M.D. Fla. Mar. 31, 2026); *Radvansky v. 1-800-Flowers.com, Inc.*, Civ No. 1:25-cv-2811-TWT, 2026 WL 456919 at *3 (N.D. Ga Feb. 17, 2026).

### 1. Loper Bright *and Eleventh Circuit Precedent Demands an Interpretation of § 227(c)(5) Independent of the FCC*.

The U.S. Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) was a watershed event in TCPA jurisprudence. *Loper* held that courts must "exercise their independent judgment" concerning statutory interpretation—agencies' interpretation no longer carry precedential weight. *Loper Bright Enters.*, 603 U.S. at 423. Even if the statute is ambiguous, no court must give an agency's interpretation any deference. *Id.* at 413.

The U.S. Supreme Court recently applied *Loper* to the TCPA. The Supreme Court addressed whether district courts are obligated to follow the Federal Communications Commission's ("FCC") interpretation of the TCPA, and the Court unequivocally answered "no." *McLaughlin Chir. Assoc., Inc. v. McKesson Corp.*, 606 U.S. 146, 149 (2025). The Court stated that district courts are "not bound by the FCC's interpretation of the TCPA," and furthermore, district courts "should interpret the statute (TCPA) as courts traditionally do under ordinary principles of statutory interpretation, affording[.]" *McLaughlin Chir. Assoc., Inc.*, 606 U.S. at 152, 168.

Prior to *McLaughlin*, district courts were bound to follow the FCC's 2003 order, which drastically increased liability beyond the statutory text. 2003 FCC Order, 18 FCC Rcd. 14014; *see e.g.*, *Mais v. Gulf Coast Collection Bureau*, 768 F.3d 1110, 1121 (11th Cir. 2014) ("the district court lacked the power to review the validity of the FCC's interpretation . . . "). However, post-*McLaughlin*, this Court owes no deference and remains free from any obligation to follow the FCC's 2003 order, any interpretation of the TCPA by the FCC, or any "*precedent that deferred to FCC interpretations.*" *Smarter Contact, Inc.*, 2026 WL 879244 at *2 (emphasis added); *see also Kendo Holdings, Inc.*, 2026 WL 810929 at *2. As shown below, the rules of statutory interpretation demand that § 227(c)(5)'s private right of action is limited to only telephone calls.

9

**2.** ***Section 227(c)(5) Provides a Private Right of Action Only for Telephone Calls—Not Text Messages.***

Plaintiff seeks relief against KDS pursuant to the private right of action codified in § 227(c)(5); however, the ordinary meaning of the statute does not permit Plaintiff relief. The private right of action is limited to telephone calls, and the undisputed facts reflect that KDS sent only text messages.

**(i)      The Plain Language of § 227(c)(5) and the Ordinary Meaning of the Terms Therein Prohibit Only Telephone Calls.**

The starting point for statutory interpretation is the plain language of the statute itself. *Pugliese v. Pukka Development, Inc.*, 550 F.3d 1299, 1303 (11th Cir. 2008) (citing to *United States v. Silva*, 443 F.3d 795, 798 (11th Cir. 2006)). "If the statute's meaning is plain and unambiguous, there is no need for further inquiry." *Silva*, 443 F.3d at 798 (quoting *United States v. Fisher*, 289 F.3d 1329, 1337-38 (11th Cir. 2002) (other citations and punctuation omitted in original)).  As enacted and amended by Congress, § 227(c)(5) states as follows:

> A person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—
> (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or
> (C) both such actions.

10

> It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.
>
> 47 U.S.C. § 227(c)(5) (emphasis added).

Facially, the statute prohibits "telephone calls." 47 U.S.C. § 227(c)(5). The statute is absent any mention of "text message." 47 U.S.C. § 227(c)(5). Without any reference to text messages, the statute clearly "creates a private right of action if a person 'received more than one telephone call' in violation of the TCPA." *Kendo Holdings, Inc.*, 2026 WL 810929 at *2 (quoting 47 U.S.C. § 227(c)(5)). Further, all Eleventh Circuit district courts that have addressed whether § 227(c)(5) prohibits text messages have held that "'the statutory text here is clear, and a text message is not a "telephone call."'" *Id.* (quoting *Davis v. CVS Pharmacy, Inc.*, 797 F.Supp.3d 1270, 1273 (N.D. Fla. 2025) (citation modified in original) and 47 U.S.C. § 227(c)(5)); *Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-CV-00847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025)); *see also Smarter Contact, Inc.*, 2026 WL 879244 at *1, and *1-800-Flowers.com, Inc.*, 2026 WL 456919 at *3.

Because the plain language of the statute is limited to telephone calls, the analysis ends here. *Kendo Holdings, Inc.*, 2026 WL 810929 at *2 (after concluding that the plain language of § 227(c)(5) excluded text messages from the private right

11

of action, the court noted that the analysis ends at the plain language but addressed plaintiff's alternative arguments). Other Eleventh Circuit district courts have held that the plain language is the end of the analysis; however, such district courts have addressed further arguments, which KDS offers in further support that § 227(c)(5) is limited to telephone calls. *Kendo Holdings, Inc.*, 2026 WL 810929 at *2-3; *Smarter Contact, Inc.*, 2026 WL 879244 at *4.

Beginning with the ordinary meaning of the terms stated in § 227(c)(5), Congress did not intend on broadening the private right of action to include text messages. While text messages are not specifically referenced in § 227(c)(5), TCPA plaintiffs have contended that "text messages" mean "telephone calls." *Smarter Contact, Inc.*, 2026 WL 879244 at *4. This view contradicts the ordinary meaning of each term.

Courts interpreting statutory language are to construe the statute in view of the "'ordinary, contemporary, common meaning . . . at the time Congress enacted the statute.'" *Wisconsin Central Ltd v. United States*, 585 U.S. 274, 284 (2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979). "To determine the ordinary meaning of a term, 'courts often turn to dictionary definitions for guidance.'" *Reed v. Chase Home Finance, LLC*, 723 F.3d 1301, 1303 (11th Cir. 2013) (per curiam) (quoting *United States v. Silvestri*, 409 F.3d 1311, 1333 (11th Cir. 2005)).

In 1991, Congress enacted the TCPA, and at such time, the ordinary meaning

of "telephone call" certainly did not include text messages but rather insinuated an actual call involving a person's audible voice. *See Smarter Contact, Inc.*, 2026 WL 879244 at *3. The Middle District of Florida noted in *Smarter Contact Inc.*, the dictionaries around 1991 indicated that "'call'" meant "'an act of instance of telephoning,'" and that a "'telephone'" was defined as "'an instrument for *reproducing sounds* at a distance…one in which *sound is converted* into electrical impulses for transmission by wire.'" *Id.* at *3 (quoting The Random House Dictionary of the English Language 297 (2d ed. 1987); Merriam-Webster's Collegiate Dictionary 162, 1211 (10th ed. 1993)); *see also Stockdale v. Skymount Prop. Grp., LLC*, 2026 WL 591842 at *3 (N.D. Ohio Mar. 3, 2026) (using Merriam-Webster New Collegiate Dictionary published in 1990 to conclude that the definitions stated within such dictionary result in the finding that "'telephone call' could not include modern-day text messages because text messages do not use a telephone to reproduce sounds at a distance."). In view of the dictionaries published around 1990, a call involved the transmission of sound from one person to another, which a text message does not—rather, the text message transmits only letters. Because a text message cannot fit within the definition of a telephone call, Congress did not intend to include text messages within the prohibition of telephone calls in the TCPA.

Even a more contemporary view of "text messages" shows the disparity

13

between the two forms of communication. The Northern District of Florida stated that:

> No normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner. Certainly, no ordinary person would think of a text message as a "*telephone* call." This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case.

*Davis*, 797 F.Supp.3d at 1273 (emphasis in original). People do not ordinarily refer to a telephone call as a text message. This is shown in how people ask to be sent a text message instead of a call because of the quick, convenient, and time-sensitive nature of a text message. The difference between a text message and telephone call is also highlighted by the devices themselves—a user interacts (sending and receiving) with text messages in a separate application than the one for telephone calls. Even phone companies show the disparity by billing text messaging separate from phone call minutes and data. Consider the local coffee shop that asks for a customer's telephone number to send text messages for coupons and rewards—no one provides their telephone numbers thinking that they are going to receive telephone calls from the coffee shop, but instead, they anticipate receiving text messages with the coupons and rewards. In sum, the ordinary meaning of "text message" does not fit within the definition for "telephone call," regardless if viewing

14

the dictionary definition in the 1990s when Congress enacted the TCPA or in today's everyday jargon.

> **(ii)** **Congress's Amendments to Provisions Surrounding § 227(c)(5) Demonstrate Congress's Intent to Prohibit Only Telephone Calls, Not Text Messages.**

Despite the ordinary meaning of § 227(c)(5) prohibiting solely telephone calls, similarly situated plaintiffs have argued that: (1) § 227(c)(5) prohibits telephone solicitations, which theoretically includes text messages, and (2) the TCPA does not explicitly include the phrase, "text messages," because Congress enacted the TCPA prior to the introduction of text messaging. *Kendo Holdings, Inc.*, 2026 WL 810929 at *2. Each of these arguments fail considering Congress's amendments to the surrounding provisions of § 227(c)(5).

Courts review and interpret statutes in light of the "Act as a whole," instead of "'isolated provisions.'" *Sunshine State Regional Center, Inc. v. Director, US Citizenship and Immigration Services*, 143 F.4th 1331, 1344 (11th Cir. 2025) (quoting *King v. Burwell*, 576 U.S. 473, 486 (2015) (other citations omitted)). When reviewing the statutory scheme, courts presume that "when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings." *Sunshine State Regional Center, Inc.*, 143 F.4th at 1344 (citing to *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457-58 (2022)).

TCPA plaintiffs turn to Section 227(c)(1), which sets forth a rulemaking

15

procedure "concerning the need to protect residential telephone subscriber's privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). TCPA plaintiffs contend that "telephone solicitations" contemplate text messages. *Kendo Holdings, Inc.*, 2026 WL 810929 at *2. However, the use of "telephone solicitations" in § 227(c)(1) is significantly different from "telephone calls" in § 227(c)(5).

Congress used "telephone solicitations" in a rule-making procedure to protect holders of residential telephone subscribers. 47 U.S.C. § 227(c)(1). But, notably, Congress used a more limited phrase, "telephone calls," in the subsection providing the private right of action. *Compare* 47 U.S.C. § 227(c)(1) with 47 U.S.C. § 227(c)(5). If Congress wished for the private right of action to extend to text messages, Congress would have used "telephone solicitations," instead of "telephone calls," or outright included "text messages." The use of a more limited phrase necessitates that Congress intended the private right of action to begin and end with telephone calls, not text messages. To include text messages would inherently broaden the scope of the private right of action in § 227(c)(5).

The U.S. Supreme Court limits private rights of action only to what Congress specifically enacts. *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001). "The fact that Congress has expressly provided private litigants with one right of action . . . powerfully suggests that Congress did not intend to provide other private rights of

16

action." *Love v. Delta Air Lines*, 310 F.3d 1347, 1357 (11th Cir. 2002) (citing to *Sandoval*, 532 U.S. at 290). Section 227(c)(5)'s private right of action affords recovery only for violative calls, not text messages. To impute text messages into the definition of "telephone calls" would push the private right of action beyond the bounds of what Congress enacted.

Eleventh Circuit district courts (including the Northern District of Georgia) have reviewed the use of "telephone solicitations" and "telephone calls" in separate provisions of § 227(c). Both the district courts stated that "Congress's decision to use a different term 'in a neighboring provision only undermines [Plaintiff's] position' because '[i]t shows that Congress does not use the term "telephone call" to encompass all "messages."'" *Kendo Holdings, Inc.*, 2026 WL 810929 at *2 (quoting *Davis*, 797 F. Supp. 3d at 1274, and 47 U.S.C. § 227(c)(5)) (modifications contained in original)). In sum, Congress's use of "telephone solicitations" in § 227(c)(1) and "telephone calls" in § 227(c)(5) demands the conclusion that Congress had no intention to extend the private right of action in § 227(c)(5) to include all telephone solicitations, but only telephone calls.

Additionally, Congress's recent changes to § 227 further highlight that § 227(c)(5) does not afford a private action for text messages. The Ray Baum's Act, contained in the Consolidated Appropriations Act, 2018, addressed issues relating to inaccurate caller identification, relevantly added a definition for text messages,

17

and prohibited the use of text messages to contain misleading identification information in § 227(e). 47 U.S.C. § 227(e); Consolidated Appropriations Act, 2018, H.R. 1625, 115th Cong. § 503 (2018). Notably, the Consolidated Appropriations Act, 2018 did not alter § 227(c) nor did it incorporate the definition for text messages in the private right of action codified at § 227(c)(5). *Id*.

The following year, Congress enacted the Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, which incorporated the new definition for text messages in § 227(e)(8) to the Act's prohibition on robocall services codified in § 227(j). Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, S. 151, 116th Cong. §§ 4, 10 (2019). Similar to the Consolidated Appropriations Act, this subsequent Act did not alter the private right of action found in § 227(c)(5), nor did it in any way incorporate the definition of text messages into the definition of "telephone calls" found in § 227(c)(5). *Id.* Through these Acts, Congress introduced a definition for a text message, prohibited the wrongful use of text messages relating to misleading identification information, and incorporated the definition of text messages in other sections of § 227; however, Congress, at no time, implemented any of the changes to § 227(c)(5).

Therefore, Congress's silence on the private of right of action in § 227(c)(5) is instructive. Congress had no intent to extend the private right of action to text messages, and as shown above, courts can only enforce the private right actions

18

affirmatively promulgated by Congress. *Sandoval*, 532 U.S. at 287.

### (iii)    No Binding Supreme Court Precedent Exists.

TCPA plaintiffs have asserted that the Supreme Court in *Campbell-Ewald Co. v. Gomez* decided that "text message" fits within the definition of a "telephone call." *Davis*, 797 F. Supp. 3d at 1273; *Kendo Holdings, Inc.*, 2026 WL 810929 at *3. Importantly, the Eleventh Circuit district courts were not persuaded. *Id.*

The Supreme Court stated: "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) (citations omitted). In a later case, the Supreme Court cited to *Campbell-Ewald Co.* and stated that "[n]either party disputes that the TCPA's prohibition also extends to sending unsolicited text messages. We therefore assume that it does *without considering or resolving that issue.*" *Facebook, Inc. v. Duguid*, 592 U.S. 395, 400, n.2 (2021) (emphasis added).

When reading *Campbell-Ewald Co.* and *Facebook* in conjunction, the Supreme Court did not decide the issue of whether "text messages" fall within the definition of "telephone calls;" rather, the Supreme Court indicated that the issue was not in dispute between the parties for that case and that such issue has yet to be ruled on and resolved. *See Davis*, 797 F. Supp. 3d at 1273. As the *Davis* court stated: "[i]n short, neither *Campbell-Ewald* nor *Facebook* includes any binding interpretation of the statutory term "telephone call" at issue here." *Id.* Additionally,

19

both Supreme Court cases address a different provision of the TCPA—namely, § 227(b)(1)(A)(iii), and such statute makes no reference to "telephone call." This statute is not at issue as Plaintiff brought his claim pursuant to § 227(c)(5). Therefore, no binding precedent conflating "text messages" to mean "telephone calls" exists, and such case law is not applicable to § 227(c)(5).

In sum, the private right of action extends only to "telephone calls." Definitionally, a text message is not a telephone call, and the ordinary use of the phrase "text message" and the law both highlight the inherent difference between a text message and a telephone call. The congressional intent, both in 1991 and the present date, reflects that telephone subscribers can seek relief only for violative telephone calls. In light of the foregoing, if KDS only sent text messages to Plaintiff, then KDS cannot be in violation of the TCPA as a matter of law.

**B. <u>KDS is Not Liable For Any Alleged Violation of § 227(c)(5).</u>**

Both KDS and Plaintiff agree—KDS never called Plaintiff. The parties further agree that KDS contacted Plaintiff only by text message. Because Plaintiff's claims involve only text messages and text messages are not prohibited by § 227(c)(5), KDS is not liable to Plaintiff and thus, this Court should grant summary judgment in favor of KDS.

On a motion for summary judgment, when a party that bears no burden of proof at trial moves the court for summary judgment, the moving party need only to

show that "'there is an absence of evidence to support the nonmoving party's case.'" *Four Parcels*, 941 F.2d at 1438 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). No genuine issue exists that KDS sent only text messages and never made a single telephone call to Plaintiff.

The evidence reveals that KDS is a digital marketing company that only sends text message solicitations to individuals who elect to receive such solicitations. (*SOF* ¶ 3). Plaintiff is the owner and authorized user of the telephone number: (404) XXX-4154. (*SOF* ¶¶ 1-2; Doc. 14-1 ¶¶ 4-6). The parties do not dispute that KDS only communicated with Plaintiff via text message and never through a telephone call. Because KDS sent only text messages, Plaintiff cannot bring a claim under § 227(c)(5), and thus KDS cannot be held liable for any violation thereof.

## IV.    NO CLASS CAN BE CERTIFIED.

KDS requests this Court to order that no class of plaintiffs can be certified in the above-styled action. "District courts have broad discretion to control their dockets and surely may deny class certification motions as untimely[.]" *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1365 (11th Cir. 2021) (citing to *McCarthy v. Kleindienst*, 741 F.2d 1406, 1412 (D.C. Cir. 1984)). The Local Rules require that "[t]he plaintiff shall move within ninety (90) days after the complaint is filed for a determination under Fed. R. Civ. P. 23(c)(1) as to whether the suit may be maintained as a class action." LR 23.1(B). However, typically, district courts will

issue a scheduling order to permit a plaintiff to conduct some discovery to obtain evidence pertinent to the class certification. *Rensel*, 2 F.4th at 1365 (quoting *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008)).

Here, Plaintiff has had more than sufficient time to file a motion for class certification and has yet to file one as of the date of this Motion. This Court issued the Scheduling Order. (Doc. 24 at 1). This Court set the close of fact discovery for March 24, 2026, and the deadline to file a motion for class certification as April 6, 2026. (Doc. 24 at 1). This Court did not subject Plaintiff to the ninety (90) day rule as prescribed by the Local Rules. (Doc. 24 at 1). Plaintiff filed the Complaint on May 16, 2025, and this Court allowed discovery until March 24, 2026. (Doc. 24 at 1). Plaintiff had over ten (10) months to conduct discovery and even more time to file a motion for class certification. Plaintiff conducted discovery but neglected to file a motion for class certification as of the date of this Motion.

Even if Plaintiff contends that objections were made to discovery, the Local Rules require that all motions to compel "must be filed within the time remaining prior to the close of discovery or, if longer, within fourteen (14) days after service of the disclosure or discovery response upon which the objection is based." LR 37.1(B). As this Court's docket shows, no motion to compel was filed prior to or after March 24, 2026.

Plaintiff had ample time to conduct discovery, raise any objections (if any),

22

and file a motion for class certification. Plaintiff has neglected to file a motion for class certification by this Court's extended deadline. In light of the foregoing, KDS respectfully requests that this Court order that no class can be certified.

## **CONCLUSION**

For all the foregoing reasons, KDS respectfully requests that the Court grant summary judgment against Plaintiff and in favor of KDS, thereby ordering that KDS did not violate the TCPA and, furthermore, that no class can be certified.

Dated: <u>April 23, 2026</u>

/s/ Blake W. Meadows
Blake W. Meadows
Georgia Bar No. 569729
Christopher J. Horton
Georgia Bar No. 316644
*Attorneys for Defendant*

SMITH & MEADOWS, LLC
215 Greencastle Road, Suite B
Tyrone, Georgia 30290
(404) 835-6506
blake@smithmeadowslaw.com
chris@smithmeadowslaw.com

## CERTIFICATE OF COUNSEL

I hereby certify that the foregoing has been prepared with Times New Roman,

14 Point font, one of the font point selections approved by the Court in L.R. 5.1C.

Dated: <u>April 23, 2026</u>

/s/ Blake W. Meadows

Blake W. Meadows

Georgia Bar No. 569729

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing *Key Digital Strategies, LLC's Brief in Support of Its Motion for Summary Judgment* with the ECF System for the Northern District of Georgia, which will automatically send email notification of such filings to attorneys of record:

Valerie Chinn
Chinn Law Firm, LLC
245 N. Highland Ave, Suite 230 #7
Atlanta, GA 30307
vchinn@chinnlawfirm.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com
*Attorneys for Plaintiff*

This 23rd day of April, 2026.

/s/ Christopher J. Horton
Christopher J. Horton
Georgia Bar No. 316644
Blake W. Meadows
Georgia Bar No. 569729

SMITH & MEADOWS, LLC
215 Greencastle Road, Suite B
Tyrone, GA 30290
(404) 835 6506
blake@smithmeadowslaw.com
chris@smithmeadowslaw.com
*Attorneys for Defendant*

25