## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **Robert Lewis Jr.,** *on behalf of himself and others similarly situated*,<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Key Digital Strategies, LLC,**<br><br>**Defendant.** | **CASE: 1:25-cv-02757-VMC**<br><br>**KEY DIGITAL STRATEGIES, LLC'S TABLE OF EXHIBITS IN SUPPORT OF ITS BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

### KEY DIGITAL STRATEGIES, LLC'S TABLE OF EXHIBITS IN SUPPORT OF ITS BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

COMES NOW, Key Digital Strategies, LLC ("KDS"), the defendant and counter-plaintiff in the above-styled action, by and through its undersigned counsel, and hereby files this *Key Digital Strategies, LLC's Table of Exhibits in Support of Its Brief in Support of Its Motion for Summary Judgment*, thereby submitting to the Court the following exhibits in support of *Key Digital Strategies, LLC's Motion for Summary Judgment*:

1. Exhibit 1 – Affidavit of John Graves with Key Digital Strategies, LLC.

2. Exhibit 2 – User Registration on Poll2Action.

The foregoing exhibits are attached hereto.

**[This space is intentionally blank.**
**Signature is on subsequent page.]**

Respectfully submitted this 23rd day of April, 2026.

/s/ Blake W. Meadows
Blake W. Meadows
Georgia Bar No. 569729
Christopher J. Horton
Georgia Bar No. 316644
*Attorneys for Defendant*

SMITH & MEADOWS, LLC
215 Greencastle Road, Suite B
Tyrone, Georgia 30290
(404) 835-6506
blake@smithmeadowslaw.com
chris@smithmeadowslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have electronically filed the foregoing *Key Digital Strategies, LLC's Table of Exhibits in Support of Its Brief in Support of Its Motion for Summary Judgment* with the ECF System for the Northern District of Georgia, and served counsel for Plaintiff via electronic mail:

Valerie Chinn
Chinn Law Firm, LLC
245 N. Highland Ave, Suite 230 #7
Atlanta, GA 30307
vchinn@chinnlawfirm.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com
*Attorneys for Plaintiff*

This <u>23rd</u> day of <u>April</u>, 2026.

/s/ Christopher J. Horton
Christopher J. Horton
Georgia Bar No. 316644
Blake W. Meadows
Georgia Bar No. 569729

SMITH & MEADOWS, LLC
215 Greencastle Road, Suite B
Tyrone, GA 30290
(404) 835 6506
blake@smithmeadowslaw.com
chris@smithmeadowslaw.com
*Attorneys for Defendant*

## CERTIFICATE OF COUNSEL

I hereby certify that the foregoing has been prepared with Times New Roman, 14 Point font, one of the font point selections approved by the Court in L.R. 5.1C.

Dated: April 23, 2026.

/s/ Blake W. Meadows
Blake W. Meadows
Georgia Bar No. 569729
Christopher J. Horton
Georgia Bar No. 316644
*Attorneys for Defendant*

SMITH & MEADOWS, LLC
215 Greencastle Road, Suite B
Tyrone, Georgia 30290
(404) 835-6506
blake@smithmeadowslaw.com
chris@smithmeadowslaw.com

# EXHIBIT 1

000047

IN THE UNITED STATES DISTRICT COURT<br>
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **ROBERT LEWIS, JR., on behalf of himself and others similarly situated,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**KEY DIGITAL STRATEGIES LLC**<br><br>**Defendant.** | **Case No. 1:25-cv-02757-VMC**<br><br><br>**AFFIDAVIT OF JOHN GRAVES OF KEY DIGITAL STRATEGIES, LLC** |

**AFFIDAVIT OF**

**JOHN GRAVES with KEY DIGITAL STRATEGIES, LLC**

COMES NOW, John Graves, on behalf of Key Digital Strategies, LLC, who declares as follows:

1.    My name is John Graves. I am over the age of eighteen (18) years. I can testify competently to the statements contained within this Affidavit.

2.    I am responsible for compliance at Key Digital Strategies, LLC and its web property Poll2Action ("KDS"), the above-named defendant. The records are created real time and kept in the ordinary course of business. KDS follows industry best practices and there is no commercially reasonable database or system that could prevent the facts alleged by Plaintiff.  I have over 15 years of compliance experience in digital marketing including the DNC and TCPA at issue in this allegation.

1

000048

3.      There are no KDS lawsuits or complaints or facts that match the Plaintiffs allegations.

4.      **Summary**.  The facts below show time-stamped System verification:

- April 6: Express written consent given by authorized user to KDS

- April 15-29: Plaintiff engaged by clicking 6 unique web links

- April 29: Opt-Out received by Plaintiff reply of "Stop"

- April 29: Number added to System Suppression list (no more text)

5.      **Consent.**  KDS verifies in the express written consent that the person providing the phone number is the authorized user of phone number. On April 6, 2025, this was the express written consent provided:



2

000049

6.      As shown, the user inserting the mobile number represents:

*"I provide my **signature expressly consenting to receive messages** … at the cellular telephone **number I have provided (as the authorized user) regardless of this number being listed on any federal or state Do Not Call registry**… Reply STOP to any message to opt-out."* (emphasis added)

7.      **DNC**. KDS maintains procedures to ensure compliance with applicable Do-Not-Call regulations. When an individual provides express written consent to receive text messages, such consent authorizes communications even when the number is included in the Do Not Call Registry (DNC), consistent with applicable law 47 C.F.R. § 64.1200(c)(2)(ii).

8.      Under applicable statutory law, express written consent overrides the Do Not Call Registry of a phone number. In this case, KDS received such consent.

9.      KDS provides marketing services that may include the delivery of text messages to individuals who affirmatively opt in to receive such communications. Plaintiff was sent limited text over a short period that are easily stopped.

10.      **A Text is Not Call.**  As the person responsible for compliance, I study regulations and case law governing text and phone calls. Following the U.S. Supreme Court's decision in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006 (2025), which held that district courts are not bound by FCC interpretations of the TCPA and must apply ordinary principles of statutory

3

000050

interpretation, several courts have now re-examined whether text messages qualify as "telephone calls" under 47 U.S.C. § 227(c)(5) or a private right of action for individuals on the National Do-Not-Call (DNC) Registry who receive a "telephone call" in violation of DNC regulations 47 CFR § 64.1200(c)(2).

11.    Two Federal District Courts in the 11th Circuit have addressed this issue and ruled that **text** messages do **not** constitute **TCPA "telephone calls"** under these regulations, focusing on the plain statutory language, the historical context (texting technology postdates the 1991 TCPA enactment), and distinctions in common usage. These rulings are instructive in this case post-*McLaughlin*, with courts emphasizing textualism over policy or FCC precedent.

- **Davis v. CVS Pharmacy, Inc.**, No. 5:24-cv-00477, 2025 WL 2491195 (N.D. Fla. Aug. 26, 2025). Plaintiff claimed CVS sent promotional text messages to her DNC-registered number without consent. The court granted dismissal, stating that "no normal person refers to a text message... as a 'call'" and that the TCPA's text is clear: § 227(c)(5) applies only to "telephone calls." It emphasized statutory interpretation with plain language, rejecting FCC deference. The court noted Congress's use of "telephone call or message" elsewhere in the TCPA (e.g., amendments), implying deliberate omission of "text messages" in the DNC section.

- **El Sayed v. Naturopathica Holistic Health, Inc.**, No. 8:25-cv-00846, 2025 WL 2856295 (M.D. Fla. Oct. 24, 2025). Plaintiff received unwanted commercial texts from defendant despite DNC registration. Dismissing the complaint, the court adopted reasoning from *Davis*, holding that texts are "separate and distinct" from "telephone calls" in common English usage. The court cited post-TCPA amendments distinguishing "calls" from "text messages" (e.g., 47 U.S.C. § 227(e)(8)), confirming Congress's awareness of the difference. Post-*McLaughlin*, the court applied the plain meaning of the statute without FCC reliance, recognizing that texts invade privacy differently but are not covered by the DNC's specific language.

4

000051

12. Based on case law, a text is not a phone call under the TCPA.

13. KDS made no phone calls to the number involved in this case.

14. **Best Practices.** KDS follows a conservative best practices compliance policy such that, even if a text message were deemed "a telephone call under the TCPA, KDS remains in compliance as it requires express written consent by a person representing themselves as the authorized user, which overrides a DNC registration.

15. KDS's marketing messages involving text messages are sent only to recipients who have: (1) provided express written consent to receive the marketing messages; (2) requested receipt of the marketing messages; (3) provided KDS with their (recipient's) first and last name, telephone number, and email address; and (4) represent they are the authorized user of the phone number.

16. KDS does not purchase contact lists or utilize any list-serve-based contact lists when issuing marketing messages.

17. KDS System exclusively uses manual transmission to opted-in users; and does not utilize Automatic Telephone Dialing Systems (ATDS) with random or sequential number generators.

18. **System**. KDS's records related to opt-in consent, message transmission, user interactions, and opt-out requests are created and maintained in the ordinary course of business. KDS captures and stores a recipient's consent, request, and provided personal information through a proprietary system developed

000052

in-house by KDS ("System"). The System includes the database of eligible opted-in recipients for KDS's marketing messages.

19.    The System segregates this database of eligible recipients by creating an internal record of individuals who have consented, requested communications, and provided personal contact information to KDS.

20.    The System requires that each eligible recipient affirmatively opt-in to receive any marketing messages from KDS. The System does not allow an individual to be an eligible recipient without completing the opt-in process including consent, requesting communications, and supplying personal contact information.

21.    As part of the opt-in process, individuals are presented with distinct disclosures regarding KDS's Privacy Policy, Terms and Conditions. All those who sign up agree to the mandatory arbitration provision set forth in paragraph 19 of KDS's Terms and Conditions.

22.    Agreement to receive marketing text messages is not bundled with any form submission and is not implied merely by providing contact information.

23.    Individuals must take an affirmative action to indicate their agreement to the marketing consent language which is acceptance of the Privacy Policy and Terms and Conditions. Once a recipient provides consent, request communications, and supplies their information, the System enters the recipient into the database as an eligible recipient. Consent records are time-stamped at the time of a submission.

6

000053

24.     An individual may submit a form or otherwise interact with KDS's services without agreeing to receive marketing communications; such individuals are not included in the database of eligible recipients for marketing messages.

25.     Each opt-in is recorded as an individual entry associated with the information submitted at the time of consent and reflects the information reasonably relied upon by KDS at that time. The person opting in is responsible for inserting their own information. The opting in individual represents that the information is true and accurate and that they are the authorized user of the phone number provided.

26.     **Professional Litigator**.  If the Plaintiff alleges that another person (such as Price) signed up using his number, he may have a claim against such person but not KDS. As a professional litigant, he has filed court records that this exact fact scenario was happening in January and March – <u>before</u> the number gave express written consent representing to be the authorized user to KDS in April.

27.     Based on publicly available information, including other lawsuits involving the same phone number opted in with other marketing companies, as well as our own System reflecting engagement with the opted-in phone number, the Plaintiff is aware of and/or working with the individual who submitted the number The Plaintiff has filed the these lawsuits using the same factual pattern and attorney, which <u>occurred for several months prior to the phone number opting in to KDS</u>:

- **Lewis v. CVS Health Corp. (also listed as CVS Pharmacy, Inc.)**
  - ○ **Case Number:** 1:2025cv03763

000054

- **Court:** U.S. District Court for the Northern District of Georgia
- **Filing Date:** July 7, 2025
- **Claims Summary:** Alleges CVS sent five unwanted marketing text messages between January 30 and March 27, 2025, despite the plaintiff's number being registered on the Do Not Call list. Seeks damages for TCPA violations.
- **Attorneys of Record:** Anthony I. Paronich

- **Lewis v. Excellence Forward, LLC**
  - **Case Number:** 1:2025cv03927
  - **Court:** U.S. District Court for the Northern District of Georgia
  - **Filing Date:** July 15, 2025
  - **Claims Summary:** Alleges unsolicited telemarketing messages in violation of TCPA, seeking treble damages for willful violations.
  - **Attorneys of Record:** Valerie Lorraine Chinn, Anthony I. Paronich
- **Cotson and Lewis v. Acima Digital, LLC**
  - **Case Number:** 4:2025cv00726
  - **Court:** U.S. District Court for the Eastern District of Texas
  - **Filing Date:** July 8, 2025
  - **Claims Summary:** Joint lawsuit alleging TCPA violations for automated telemarketing outreach without consent.
  - **Attorneys of Record:** Leland Garrett McRae, Anthony I. Paronich
- **Lewis v. Healthcare HD LLC**
  - **Case Number:** 1:2025cv02756
  - **Court:** U.S. District Court for the Northern District of Georgia
  - **Filing Date:** May 16, 2025
  - **Claims Summary:** Alleges TCPA violations involving telemarketing outreach to a Do Not Call-listed number.
  - **Attorneys of Record:** Valerie Lorraine Chinn, Anthony I. Paronich
- **Lewis v. 4th Avenue Marketing LLC**
  - **Case Number:** 1:2025cv02764
  - **Court:** U.S. District Court for the Northern District of Georgia
  - **Filing Date:** May 18, 2025
  - **Claims Summary:** Concerns marketing text messages delivered in March 2025, alleging TCPA violations for unsolicited telemarketing.
  - **Attorneys of Record:** Valerie Lorraine Chinn, Anthony I. Paronich

28.    Plaintiff's numerous lawsuits demonstrate his direct knowledge of this number being allegedly used by the former user for several months before this

8

000055

number gave express written consent as the authorized user to KDS. Plaintiff either cooperated with or had direct knowledge of the consent given to KDS.

29.    **Simple Opt-Out.** Every single opted-in recipient is provided with clear instructions to opt out – "Stop2End" — in the first text message and in every subsequent text. The Plaintiff did not follow the instructions in the first initial text messages sent after his number gave express written consent. After engaging by clicking several text links, the Plaintiff did reply "Stop", as each text instructed, to cease all texts, and did not receive any further messages. This action demonstrates that any recipient, including the Plaintiff, can immediately opt out of any future text messages even if their number was, in fact, signed up by another individual.

30.    Mobile phones provide the option to block a number. The Plaintiff could have blocked the sending number at any time after expressing written consent was provided by the individual representing that they were the authorized user.

31.    Once an eligible recipient follows these clear opt-out instructions, the System identifies the request and automatically prevents additional marketing messages to being sent to that recipient. The individual is added to a "Suppression" list, and no further text messages are sent once they have opted out of receiving communications. The Plaintiff was added to the Suppression list immediately after replying "Stop," and no further text messages sent after the opt-out.

32.    **No Class.** KDS has never had another instance in which a party alleged

9

000056

that someone else signed up their number. Upon review of our data, we are unaware of any responsive instance comparable to the Plaintiff's allegations. The pattern of the Plaintiff's lawsuits demonstrates a pattern indicating he was aware of, if not responsible for, the use of his phone number.

33.    KDS is not aware of any other inaccurate or fraudulent identity or any data entries that would be factually similar the allegations presented in this case. The only common pattern demonstrated by the facts in this case is Plaintiff's status as a professional litigator.

34.    Any text messages sent to the Plaintiff were generated based on the Plaintiff's individualized request and/or interest and were not the result of a uniform or static messaging campaign. Any alleged communications to the Plaintiff's number would necessarily depend on individualized circumstances, including but not limited to, issues of consent, identity, timing, engagement, opt-out status, and carrier-level delivery conditions.

35.    **Best Practices.**    The fact pattern alleged by Plaintiff cannot be addressed through any software or database commercially available. There is no reasonably commercial method to avoid the fact scenario alleged by the professional litigant Plaintiff. The person gave (1) gave express written consent which overrides any Do-Not-Call Registry; (2) represented themselves as the Authorized user of the phone number; (3) and according to the Reassigned Numbers Database, did not opt-

10

in before the number was reassigned. KDS followed all commercially available compliance best practices in the case before this Court.

36.    The System requires each recipient to provide personal identifying information, including first and last name, telephone number, and email address— along with the recipient selecting a clearly marked consent checkbox and an additional form submit button. The System process ensures that the recipient knowingly consents to receive marketing messages.

37.    In this case, the Plaintiff had reason to know (as evidenced by his other lawsuits) that another individual was submitting opt-in information using the same phone number. Any communications received by the Plaintiff therefore arose from individualized circumstances involving third-party submissions and use of the phone number, rather than from any practice by KDS. No other KDS opt-ins have ever been alleged to be an opt-in by another party.

38.    Any alleged "wrong party" contact would depend on individualized facts, including who submitted the opt-in information and when the submission occurred. There is no universal fact linking any such alleged wrong party contact. KDS is unaware of any other instances of wrong party contact as alleged by Plaintiff.

39.    **Stop2End.** Every text message sent by KDS (including those sent to the Plaintiff) contains clear instructions advising recipients to reply "Stop" to opt out of future communications.  No text can be sent without these instructions.

11

000058

40.    The Plaintiff was provided clear instructions to reply to text with the word "Stop2End" to opt out. In fact, the Plaintiff followed those instructions only after interacting with six (6) text messages by clicking the web links, rather than replying "Stop" as shown by the Plaintiff's own admission and screen shots of the actual text messages:



000059

41.    **Implied Consent.**  Prior to opting out, the Plaintiff interacted with six (6) text messages by clicking the web links containing offers.

42.    The System sent additional messages to the Plaintiff *because* he was actively clicking links and engaging with the marketing content.

43.    The Plaintiff would have only received a single (1) text if he had blocked the texts using an app, iPhone/Android auto-delete/block features, or simply replied "Stop," as clearly instructed in every text message.

44.    Instead, the Plaintiff chose to interact with and click on the web links within the offers rather than opting out by replying "Stop" or using one of several tools to block, the Plaintiff chose to interact and click the websites within the offers, which triggered the delivery of additional offers in accordance with the initial express written consent.

45.    As shown, the System records that the Plaintiff clicked six (6) of the links in text messages sent to him. The Plaintiff clicked and opened different web links on April 16; 18 (twice); 22; 25; and 29.

46.    The data below shows the exact date and time logs that Plaintiff clicked links and engaged with the messages.

13

000060

**Text Message Communication Timeline**

| Date (EDT) | Time (EDT) | Message ID | Clicked? | Click Time (EDT) | Incoming |
|---|---|---|---|---|---|
| 2025-04-15 | 12:52 PM | 364 | Yes | 2025-04-16 1:09 PM | |
| 2025-04-16 | 11:12 AM | 366 | No | — | |
| 2025-04-16 | 1:09 PM | 351 | No | — | |
| 2025-04-16 | 1:09 PM | 352 | No | — | |
| 2025-04-16 | 1:09 PM | 146 | No | — | |
| 2025-04-16 | 3:42 PM | 180 | No | — | |
| 2025-04-17 | 11:12 AM | 369 | No | — | |
| 2025-04-18 | 11:20 AM | 373 | Yes | 2025-04-18 11:24 AM | |
| 2025-04-18 | 11:24 AM | 242 | No | — | |
| 2025-04-18 | 11:24 AM | 180 | Yes | 2025-04-18 3:31 PM | |
| 2025-04-19 | 11:10 AM | 364 | No | — | |
| 2025-04-20 | 8:23 AM | 369 | No | — | |
| 2025-04-21 | 11:35 AM | 378 | No | — | |
| 2025-04-22 | 8:10 AM | 364 | Yes | 2025-04-22 9:36 AM | |
| 2025-04-22 | 9:36 AM | 146 | No | — | |
| 2025-04-22 | 9:36 AM | 351 | No | — | |
| 2025-04-23 | 9:39 AM | 383 | No | — | |
| 2025-04-24 | 8:21 PM | 390 | No | — | |
| 2025-04-24 | 8:42 AM | 392 | No | — | |
| 2025-04-25 | 11:13 AM | 395 | Yes | 2025-04-25 4:30 PM | |
| 2025-04-25 | 4:30 PM | 242 | No | — | |
| 2025-04-25 | 4:30 PM | 283 | No | — | |
| 2025-04-28 | 5:14 PM | 399 | No | — | |
| 2025-04-29 | 11:03 AM | 404 | Yes | 2025-05-04 3:30 PM | |

47.    Over a 14-day period, the Plaintiff opened these six (6) unique web links sent to the phone number that had provided express written consent by someone representing themself as the authorized user of the number.

48.    Plaintiff's interaction with the text demonstrated that there was no concrete injury or harm, but he affirmatively invited more communication by clicking the links and was an active participant in the communication. Plaintiff's voluntary engagement demonstrates acceptance, ratification, and consent of the opt-in; and failure to mitigate.

14

000061

49.    **Best Practices Opt-Out.**  Following all commercially available best practices, KDS has demonstrated good faith and no willfulness in the facts even as alleged by Plaintiff. KDS would have no knowledge or reason to know if another person represented, they were the authorized user and gave express written consent. We obtained and recorded (date, IP address, timestamp, consent language and screenshots) such consent and all active engagements of number.

50.    No further marketing text messages were sent to the Plaintiff's number after his first reply of "Stop." On April 29, 2025, the Plaintiff replied "Stop", consistent with the clear instructions provided in every single text sent by KDS. Below shows the date and time log when the phone number replied with "Stop".



| 2025-04-29 | 11:05 AM | — | — | — | User sent "Stop" message |
| No further messages sent after receiving the Opt-out request from the user. | | | | | |

51.    The System automatically adds any opt-out to a Suppression list, and no further text messages can be sent using the System. KDS System makes it impossible for any phone to receive a text message through the System after opting out.  The Plaintiff's number opted in, and after the Plaintiff replied "Stop," no further text messages were sent.

52.    The Suppression list is global across all marketing activities operated or managed by KDS and applies uniformly to prevent any further marketing text

15

000062

messages from being sent to that number.

53.    KDS utilizes its own System to send marketing messages. The System requires each recipient to individually opt in before receiving marketing communications. KDS does not send unsolicited marketing messages to recipients.

54.    If the Plaintiff, or anyone using the number, were to attempt a subsequent opt in, the Suppression list would override that expressed opt-in. This is most conservative best practice in the industry showing KDS good faith compliance system with no willfulness, limited harm, immediate honoring of "Stop," obtaining express written consent of a person representing they are the authorized user.

By signing below, I hereby certify that the above statements are true and accurate to best of my knowledge on this 16th day of February 2026.

John Graves

_____

John Graves,
Key Digital Strategies, LLC

# EXHIBIT 2

00001

**User registered on KDS site: Poll2Action:**
**(all messages sent to this number from Poll2Action**

| Field | Value |
|---|---|
| timestamp | 2025-04-06 15:38:51 EDT |
| address | ▮▮▮▮▮ |
| city | ▮▮▮▮ |
| state | GA |
| zip | ▮▮▮ |
| first_name | shirel |
| last_name | price |
| gender | F |
| dob | ▮▮▮▮ |
| ip_address | 2600:1702:ed0:ec60:ec6c:5b98:d957:514 |
| age | ▮▮ |
| p2a_registration | TRUE |
| user_agent | Mozilla/5.0 (Linux; Android 10; K) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/135.0.0.0 Mobile Safari/537.36 |
| email | priceshirel35@gmail.com |
| phone | 4044354154 |