**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| **Robert Lewis Jr.**, *on behalf of himself and others similarly situated*, <br><br> **Plaintiff,** <br><br> **v.** <br><br> **Key Digital Strategies, LLC,** <br><br> **Defendant.** | **CASE: 1:25-cv-02757-VMC** <br><br> **DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Key Digital Strategies, LLC ("KDS"), the defendant and counter-plaintiff, by and through its undersigned counsel, and hereby files this *Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment*, by stating the following:

**<u>INTRODUCTION</u>**

Plaintiff posits that KDS's Motion for Summary Judgment ("Motion") "rises and falls" on this District's recent decisions, holding that a text message does not violate 47 U.S.C. § 227(c)(5). (Doc. No. 38 at 1-2). However, KDS's Motion rises and rests on the plain language of the statute and is further supported by Congress's amendments to the TCPA and Eleventh Circuit district courts' holdings.

Plaintiff argues that KDS's Motion and this District's decisions error on four

grounds: (1) the date of the dictionaries used to define "call"; (2) the existence of "text-based" calls prior to 1991; (3) the misinterpretation of Congress's 2018 amendments to the TCPA; and (4) the misapplication of the canon against surplusage. (Doc. No. 38 at 2). Plaintiff's additional arguments include a Ninth Circuit's decision concerning § 227(b), a misinterpretation of § 227(c)(1)(E), and a mischaracterization of FRCP 23. As set forth below, Plaintiff's arguments are unfounded. This Court should follow this District's decisions and grant KDS's Motion.

<u>**ARGUMENT**</u>

KDS argues the same rationale that this District and other Eleventh Circuit district courts have accepted, when holding that text messages do not violate 47 U.S.C. § 227(c)(5). Plaintiff asks this Court to reject the rational in this District's decisions that interpret 227(c)(5) and, instead, strike out in a new direction. Plaintiff's alleged errors are baseless and unpersuasive.

Section 227(c)(5)'s private right of action is plain and clear—only a violative telephone call entitles a recipient to relief. Plaintiff attempts to muddy the waters of § 227(c)(5) by arguing "call" is ambiguous. However, the Northern District of Florida recently stated: "Certainly, no ordinary person would think of a text message as a 'telephone call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case." *Davis v. CVS*

*Pharmacy, Inc.*, 797 F.Supp.3d 1270, 1273 (N.D. Fla. 2025). Notwithstanding the clarity of § 227(c)(5) and this District's cases, KDS replies to Plaintiff's arguments.

## A. ELEVENTH CIRCUIT DISTRICT COURTS SUPPORT KDS.

KDS's Motion cites to and is supported by two recent cases from this District —notably, *Radvansky v. 1-800-Flowers.com, Inc.*, Civ No. 1:25-cv-2811-TWT, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026) and *Radvansky v. Kendo Holdings, Inc.*, Civ. No. 3:23-cv-00214-LMM, 2026 WL 810929 (N.D. Ga. Feb. 12, 2026). Three days prior to filing KDS's Motion, this District issued the decision in *Irvin v. Sonic Indus. Srvs., LLC*, which again held that text messages do not constitute telephone calls under 47 U.S.C. § 227(c)(5). *Irvin v. Sonic Indus. Srvs., LLC*, Civ. No. 3:25-cv-00242-LMM, 2026 WL 1098403, at *5 (N.D. Ga. Apr. 20, 2026). Following the Supreme Court's decisions in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024) and *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 162 (2025), this District concluded that 227(c)(5)'s private right of action is limited to only telephone calls. *1-800-Flowers.com, Inc.*, 2026 WL 456919, at *3; *Kendo Holdings, Inc.*, 2026 WL 810929, at *2; *Irvin*, 2026 WL 1098403, at *5. Other Eleventh Circuit district courts are aligned. *Davis*, 797 F.Supp.3d at 1273; *Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-CV-00847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025); *James v. Smarter Contact, Inc.*, Civ. No. 8:25-cv-1657-KKM-SPF, 2026 WL 879244, at *1 (M.D. Fla. Mar. 31, 2026).

3

Despite this overwhelming trend, Plaintiff contends that these district courts all fell victim to deficient reasoning.

## B. PLAINTIFF INCORRECTLY DEFINES "CALL."

A plain reading of § 227(c)(5) limits the private right of action to only telephone calls, not text messages. A court's first step in analyzing a statute is examining the "plain language of the provision to be interpreted." *Pugliese v. Pukka Development, Inc.*, 550 F.3d 1299, 1303 (11th Cir. 2008) (citations omitted). "If the statute's meaning is plain and ambiguous, there is no need for further inquiry." *United States v. Fisher*, 289 F.3d 1329, 1337-38 (11th Cir. 2002). Courts "apply the plain language of a statute unless doing so would lead to an absurd result." *Pugliese*, 550 F.3d at 1303.

Here, the plain language of the statute applies only to *telephone calls*. The provision reads: "A person who has received more than one *telephone call* within any 12-month period . . .." 47 U.S.C. § 227(c)(5) (emphasis added). The provision, as opposed to other sections of § 227, does not state "telephone call or text message" or "telephone solicitations." *See* 47 U.S.C. §§ 227(a)(4), (c)(5). Therefore, because the statute is plain and unambiguous, the analysis ends there.

Despite the clarity, Plaintiff suggests there is ambiguity in the word "call." Plaintiff suggests that KDS and this District fail to look at the appropriate dictionary definitions. For the sake of brevity, KDS's Motion provided several dictionary

definitions contemporaneous with the TCPA's enactment along with citations to cases adopting said dictionary definitions. (Doc. No. 34-1 at 12-13).

Plaintiff further attempts to broaden the scope of § 227(c)(5) by attempting to define "call" without any reference to "telephone." (Doc. No. 38 at 5). By isolating "call," Plaintiff violates principles of statutory interpretation by strategically picking and omitting words to define "call." Additionally, Plaintiff's interpretation of "call" does not comport with the contemporaneous definition of "telephone call" at the time of TCPA's enactment. In 1991, telephones were limited to only oral and voice communications, as the TCPA predated the invention of text messaging. *Stockdale v. Skymount Prop. Grp., LLC*, Civ. No. 1:25-cv-1282, 2026 WL 591842, at *3, n.5 (N.D. Ohio Mar. 3, 2026); *Kendo Holdings, Inc.*, 2026 WL 810929, at *3.

Accepting the broad definition of "call" independent of "telephone," and reading "call" to mean "any communication," results in absurd interpretations of § 227(c)(5). For example, any message through an application (Instagram, X, TikTok) can violate § 227(c)(5). *See Stockdale*, 2026 WL 591842, at *3, n.5. To accept such interpretation, plaintiffs would flood this Court with TCPA actions.

A statute is not limited to the technology in existence at the time of enactment. However, the U.S. Supreme Court held that courts "'must interpret what Congress wrote,' even in the face of changing technology." *Id.* at *3, n.6 (quoting *Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021)). *Duguid* is instructive. The Supreme Court

held that the TCPA defined an "automatic telephone dialing system," but Facebook's technology was different from what the TCPA regulated, thus Facebook was not held liable. *Duguid*, 592 U.S. at 398, 404. Plaintiff is similarly situated to Duguid. KDS sent text messages, which is a different technology than telephone calls, thereby absolving KDS of liability.

## C. CONGRESS'S USE OF "CALL" IN THE ADA NECESSITATES THAT "TELEPHONE CALL" REQUIRES VOCAL COMMUNICATION.

Plaintiff argues that in the Americans with Disabilities Act of 1990 ("ADA"), Congress used "call" to refer to "telephone calls placed using a telephone relay operator, in which an operator types the other side's speech into a TTY/TDD device for a deaf individual to read." (Doc. No. 38 at 8). Plaintiff argues that because, in that limited circumstance, a telephone call was transmitted into words, all text messages should be considered calls. Plaintiff does not cite any authorities (not even the ADA), thus KDS cannot verify Plaintiff's arguments; regardless, Plaintiff's argument, if true, weighs in favor of KDS.

Plaintiff's argument necessitates vocal communication that then uses additional technology to reduce vocal communication into a written format to constitute a "call." Congress enacted the TCPA and ADA prior to the invention of text messaging. *See Irvin*, 2026 WL 1098403, at *3. Thus, Congress could not have contemplated text messaging when enacting the ADA. Furthermore, Plaintiff's argument necessitates that prior to an operator transmitting the telephone call into a

6

TTY/TDD device, someone must first commence a *voice call* to be transmitted into the TTY/TDD device. The telephone call begins with a voice call, not mere text. By Congress using "call," Congress referred to a conversation originating with a voice.

## D. STATUTORY *STARE DECISIS* IS INAPPLICABLE.

Plaintiff misconstrues Congress's amendments in § 227(e)(8) and silence concerning § 227(c)(5) as creating statutory *stare decisis*. This District's contrary decisions refute Plaintiff's argument.

Beginning with § 227(e)(8), Plaintiff contends that the definitions in (e)(8) do not purport to limit "call" anywhere in the statute. (Doc. No. 38 at 9). However, § 227(e)(8), which was part of Congress's 2018 amendments, provides a definition for a "text message," and the definition unequivocally excludes any voice or video communication. 47 U.S.C. § 227(e)(8); Consolidated Appropriations Act, 2018, H.R. 1625, 115th Cong. § 503 (2018). By including this definition, Congress was aware of the differences between telephone calls and text messages and specifically neglected to alter § 227(c)(5)'s prohibition of telephone calls.

Next, Plaintiff argues that Congress's silence on § 227(c)(5) creates statutory *stare decisis* and, thus, this Court is to follow the FCC's interpretation of § 227(c)(5). (Doc. No. 38 at 10-12). As stated in KDS's Motion, Congress's 2018 amendments reflect both the recognition that text messages cannot violate § 227(c)(5) and the unwillingness to alter § 227(c)(5)'s private right of action. (Doc. No. 34-1 at 17-18).

7

For brevity, KDS addresses only Plaintiff's statutory *stare decisis* argument.

The legal doctrine of *stare decisis* does not apply. Plaintiff does not identify any decision from the Supreme Court, federal circuit court of appeals, or series of district court cases that reflect statutory stare decisis.

Furthermore, courts are no longer bound to the FCC's interpretations and, thus, stare decisis does not exist. Prior to *Loper*, district courts were compelled to follow the FCC's interpretation with no choice. *See Turizo v. Subway Franchisee Advert. Fund Trust Ltd.*, 603 F.Supp.3d 1334, 1341-42 (S.D. Fla. 2022) ("However, the Court lacks jurisdiction to review a final order of the FCC, including the 2003 Order."). In other words, before *Loper*, district courts were required to decide a case, not based on the statute's language, but rather based on regulations and interpretations promulgated by the FCC. *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1113 (11th Cir. 2014) ("Congress unambiguously deprived the federal district courts of jurisdiction to invalidate FCC orders by giving exclusive power of review to the courts of appeal."). During the pre-*Loper* era, courts expressed dissatisfaction with the FCC's interpretation of the TCPA and the desire to change it. *See Turizo*, 603 F.Supp.3d at 1342 ("Despite an unauthorized expansion of the private right of action for violations of the TCPA's do-not-call provision, the Court must enforce the rules and regulations set forth by the FCC."). *Loper* and *McLaughlin* empowered lower courts to apply the TCPA without being bound to

8

agency interpretations. *See Loper* 603 U.S. at 402; *McLaughlin*, 606 U.S. at 162.

In the wake of *Loper*, Eleventh Circuit district courts have already determined that the FCC wrongfully interpreted § 227(c) and held that text messages do not constitute telephone calls. *Kendo Holdings, Inc.*, 2026 WL 810929, at *2; *Sayed*, 2025 WL 2997759, at *2; *Smarter Contact*, 2026 WL 879244, at *1; *1-800-Flowers.com, Inc.*, 2026 WL 456919, at *3; *Irvin*, 2026 WL 1098403, at *5; *Davis*, 797 F.Supp.3d at 1273; *see also Jones v. Blackstone Med. Srvs., LLC*, 792 F.Supp.3d 894, 901 (2025) (C.D. Ill. 2025); *Stockdale*, 2026 WL 591842, at *2 ("Without any clear guidance from either the Sixth Circuit or the Supreme Court, this Court joins several others in holding that the term 'telephone call' as used in Section 227(c)(5) of the TCPA does not encompass 'text messages.'"). The very existence of so many cases in the post-*Chevron* era deciding opposite to the FCC's interpretation reflects the absence of any *stare decisis*.

## E. THE CANON AGAINST SURPLUSAGE DEMANDS THAT A TEXT MESSAGE AND A TELEPHONE CALL ARE DISTINCT TERMS.

Plaintiff argues that this District errored by misapplying the defined terms in § 227. (Doc. No. 38 at 13-14). However, the canon against surplusage necessitates the same conclusion reached in *Irvin* and *1-800-Flowers.com, Inc.*—namely, that Congress's use of "telephone call" in one section and "telephone solicitation" in other sections demands that each phrase houses distinct meanings and such meanings cannot be disregarded. *Irvin*, 2026 WL 1098403, at *4, n.5 (citing *1-800-*

*Flowers.com, Inc.*, 2026 WL 456919, at *3).

When the plain language of the statute is unambiguous, any further analysis using interpretative canons becomes unnecessary. *In re 2 Monkey Trading, LLC*, 142 F.4th 1323, 1334 (11th Cir. 2025) (citing *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1225 n.6 (11th Cir. 2001)); *see also Kendo Holdings, Inc.*, 2026 WL 810929, at *2 ("as the only other district courts in the Eleventh Circuit to substantively take up this question have noted, 'the statutory text here is clear, and a text message is not a telephone call.'"); *Irvin*, 2026 WL 1098403, at *2.

Notwithstanding the foregoing, application of the canon against surplusage weighs in favor of this District and KDS's interpretation of § 227(c)(5). This canon requires that "whenever possible, [courts are] to disfavor an interpretation when that interpretation would render a 'clause, sentence, or word … superfluous, void, or insignificant.'" *In Re Shek*, 947 F.3d 770, 777 (11th Cir. 2020) (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (additions added)). Correctly applying this canon demands that "telephone call" cannot also refer to text messages, as text messages are part of a defined term in the statutory scheme.

Section 227(a)(4) defines "telephone solicitation" as both a "telephone call or message[.]" 47 U.S.C. 227(a)(4). The entirety of § 227 uses "telephone solicitations" 15 times. 47 U.S.C. § 227. However, § 227(c)(5) does not state "telephone solicitations," but only "telephone call." 47 § 227(c)(5). By the very structure of §

10

227(c)(5), the private right of action is designed to provide relief for violative *telephone calls*, not telephone solicitations, as telephone solicitations is a defined term used in other subsections. In the same subsection, Congress used "telephone solicitations" as part of an affirmative defense—by doing so, Congress drafted the affirmative defense more broadly than the private right of action. 47 U.S.C. § 227(c)(5).

Plaintiff disregards the difference between "telephone call" and "telephone solicitations." Plaintiff violates the canon against surplusage by attempting to render "telephone call" useless. Plaintiff's interpretation effectively rewrites § 227(c)(5) by pretending that "telephone call" is not the operative language and instead that "telephone solicitations" is what Congress meant to say but failed to. By replacing "telephone call" with "telephone solicitations," Plaintiff makes the distinction between the two terms completely superfluous, despite "telephone solicitations" being a defined term. *See Irvin*, 2026 WL 1098403, at *4 (citing *1-800-Flowers.com, Inc.* 2026 WL 456919, at *3 ("[C]onstruing these distinct phrases identically would render superfluous the different terms Congress chose to use in each subsection, a result which would violate the canon against surplusage.")).

## F. NO FEDERAL CIRCUIT COURT DECISION HAS HELD THAT A TEXT MESSAGE IS A TELEPHONE CALL UNDER 47 U.S.C. § 227(c)(5).

Plaintiff insinuates that *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. 2026), has already decided the issue at hand in Plaintiff's favor. The Ninth

11

Circuit Court of Appeals is not binding authority on this Court; regardless, *Howard* did not address whether text messages fit within "telephone call" under § 227(c)(5). Furthermore, as shown by *Stockdale* and *Smarter Contact*, the Ninth Circuit's interpretation neglected to consider the question of the accurate definition of "telephone call."

Importantly, *Howard* addresses only § 227(b), finding that for § 227(b) only, text messages constituted calls. *Howard*, 164 F.4th at 1124. However, as the Eleventh Circuit district court reasoned in *Smarter Contact*, *Howard* relied upon *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953-54 (9th Cir. 2009), which defined "call" based on a 2002 dictionary's *verb* definition for "to call." *Smarter Contact,* 2026 WL 879244, at \*3. *Smarter Contact* refuted *Howard*'s analysis because, even if using the verb form of "call," § 227(c)(5)'s modifier of "telephone" to "call" still necessitates a voice call. *Id.* at \*4; *see also Stockdale*, 2026 WL 591842, at \*4, n.5.

Notably, if *Howard* is applied, judicial economy suffers. The Eleventh Circuit district courts would be flooded with TCPA actions for any form of messaging. For example, plaintiffs may file lawsuits for any unwanted messages sent through Internet applications, like TikTok, Instagram, or X.

## G. PLAINTIFF MISCONSTRUES § 227(C)(1)(E).

Plaintiff contends that § 227(c)(1)(E) expressly delegated authority to the

FCC to "fill up the details," and thus, this Court must accept the FCC's interpretation. (Doc. No. 38 at 17). *Irvin* rejected this argument. This District stated:

> Moreover, Plaintiff's argument that Section 227(c)(1)(E) instructs the FCC to "fill up the details" of the TCPA's DNC provisions by defining "telephone call" is unavailing. As other courts to hear similar arguments have held, claiming authority to make such a determination under *Loper Bright* "would likely more than double the number of private causes of action authorized by the TCPA."

*Irvin*, 2026 WL 1098403, at *5 (citing *1-800-Flowers.com, Inc.*, 2026 WL 456919, at *4 (internal citations omitted)). Plaintiff argues for a pre-*Loper* legal landscape, in which the FCC's regulations still control, resulting in this Court lacking the ability to review the statute. However, the Eleventh Circuit district courts have already rejected this argument, as accepting the FCC's rule-making authority and binding interpretation effectively reverses *Loper*.

## H. KDS HAS NO OBLIGATION TO FILE A RULE 23 MOTION.

Plaintiff asserts that "[i]f KDS wants Rule 23 relief, the proper course is a properly noticed Rule 23 motion." (Doc. No. 38 at 22). Plaintiff does not cite any supporting authority for this assertion.

Eleventh Circuit district courts have ruled on a motion for summary judgment, then rendered a class certification as moot after granting the dispositive motion for summary judgment. *Smith v. Networks Solutions, Inc.*, 135 F.Supp.2d 1159, 1171 (N.D. Ala. Mar. 22, 2001) (denying a motion for class certification as moot after granting a dispositive motion for summary judgment); *Menuel v. Hertz Corp.*, Civ.

13

No. 1:07-CV-3031-WBH, 2010 WL 11500071, at *1, 6 (N.D. Ga. Nov. 9, 2010). Here, KDS's Motion is dispositive of the claims alleged against KDS. If this Court finds that text messages do not fall within the definition for "telephone call" under § 227(c)(5), then Plaintiff and any similarly situated person is not entitled to relief from KDS.

Additionally, despite Plaintiff's misstatement of law, Plaintiff fails to provide this Court any explanation as to why Plaintiff failed to file a timely motion for certification of a class, why Plaintiff has yet to file such motion, or indicate any prejudice any class member may suffer as a result of KDS's Motion. Because KDS's Motion is dispositive, KDS respectfully requests that this Court render Plaintiff's class action as moot.

## CONCLUSION

For the foregoing reasons, KDS respectfully requests that the Court grant summary judgment against Plaintiff and in favor of KDS, thereby ordering that KDS did not violate the TCPA and, furthermore, that no class can be certified.

Dated: June 2, 2026.

/s/ Blake W. Meadows
Blake W. Meadows
Georgia Bar No. 569729
Christopher J. Horton
Georgia Bar No. 316644

SMITH & MEADOWS, LLC
215 Greencastle Road, Suite B
Tyrone, Georgia 30290

14

(404) 835-6506
blake@smithmeadowslaw.com
chris@smithmeadowslaw.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing *Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment* with the ECF System for the Northern District of Georgia, and served counsel for Plaintiff via electronic mail:

|  |  |
|---|---|
| Valerie Chinn | Anthony I. Paronich |
| Chinn Law Firm, LLC | Paronich Law, P.C. |
| 245 N. Highland Ave, Suite 230 #7 | 350 Lincoln Street, Suite 2400 |
| Atlanta, GA 30307 | Hingham, MA 02043 |
| vchinn@chinnlawfirm.com | anthony@paronichlaw.com |

This 2nd day of June, 2026.

/s/ Christopher J. Horton
Christopher J. Horton
Georgia Bar No. 316644

## CERTIFICATE OF COUNSEL

I hereby certify that the foregoing has been prepared with Times New Roman, 14 Point font, one of the font point selections approved by the Court in L.R. 5.1C.

Dated: June 2, 2026.

/s/ Blake W. Meadows
Blake W. Meadows
Georgia Bar No. 569729